STATE OF CONNECTICUT v. GEORGE B.*
(SC 16504)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

---

* Thus entitled to protect the identity of the victim and in keeping with the spirit of General Statutes § 54-86e.

Argued September 11—officially released December 25, 2001

*David V. DeRosa*, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Stephen Sedensky*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The defendant, George B., appeals from the judgment of conviction, rendered after a jury trial, on charges of sexual assault in the first degree in

violation of General Statutes § 53a-70 (a) (1)[1] and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2),[2] in connection with an incident involving the daughter of his adopted daughter.

The defendant raises five issues on appeal. He contends that the trial court: (1) violated his due process right to a fair trial by failing to order, sua sponte, a competency examination after observing his behavior at trial, which the defendant alleges indicated that he was mentally ill and could not assist in the preparation of his defense; (2) improperly allowed the victim's sister to testify as to uncharged sexual misconduct involving the defendant, which, he claims, was too dissimilar from the sexual conduct with the victim to warrant application of the intent or common plan or scheme exception to the general rule prohibiting admission of uncharged misconduct; (3) improperly interpreted § 53a-72a (a) (2) to encompass conduct occurring between persons related by adoption, rather than blood; (4) improperly failed to instruct the jury on the definition of "knowingly" in connection with the scienter element of § 53a-72a (a) (2), when the defendant claimed to have stated repeatedly at trial that the victim was not his granddaughter; and (5) improperly failed to charge the jury that a mistake of fact can negate intent. We disagree with the defendant and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 22, 1966, the defendant married V, a

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person . . . ."

[2] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."

woman who already had children. During the course of the marriage, on June 6, 1969, the defendant adopted two of V's children, T and R, as his own. The couple divorced in the mid-1970s. V retained custody of the children, but the defendant paid child support for both T and R until they reached eighteen years of age. The defendant's adopted daughter, T, also had children, C and J. T moved out of state, and C lived with V, her grandmother. While living with V, C was not allowed to have contact with the defendant. In late 1996, C moved out of V's home and began living with her boyfriend. At this time, C began to see the defendant on a more regular basis. In 1997, C began visiting the defendant's home with her sister, J, who worked there as a home health aid to an elderly woman living with the defendant. On several of these visits, the defendant tried to touch and grab C in an inappropriate manner. Occasionally, C and the defendant would go out to dinner and shopping.

On the evening of March 13, 1997, the defendant picked C up in Milford, took her to dinner and then to his home. C asked the defendant for cigarettes, which he indicated were in his bedroom. C went to the bedroom and was followed by the defendant. He pushed C facedown on the bed and had vaginal intercourse with her. At trial, the defendant testified that he had sexual intercourse with the victim on March 13, 1997, but claimed that it had been consensual. The defendant was arrested and charged with sexual assault in the first degree in violation of § 53a-70 (a) (1) and sexual assault in the third degree in violation of § 53a-72a (a) (2). After a trial, the jury returned a verdict of guilty on both counts.

At the sentencing hearing, the court granted the defense's request for an evaluation, in accordance with

General Statutes § 17a-566 (a),[3] to determine whether the defendant was competent to be sentenced. After a hearing on the defendant's competency, the court ordered the defendant to be committed to the Whiting Forensic Institute for sixty days for further evaluation and treatment. After the sixty day evaluation, the court, pursuant to General Statutes § 17a-567 (c),[4] found that

---

[3] General Statutes § 17a-566 (a) provides: "Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person has psychiatric disabilities and is dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the division. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the division for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. Such examination may be conducted at a correctional facility if the defendant is confined or it may be conducted on an outpatient basis at the division or other appropriate location. If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the division for a period not to exceed sixty days, except as provided in section 17a-567 provided the hearing may be waived by the defendant. Such commitment shall not be effective until the director certifies to the court that space is available at the diagnostic unit. While confined in said diagnostic unit, the defendant shall be given a complete physical and psychiatric examination by the staff of the unit and may receive medication and treatment without his consent. The director shall have authority to procure all court records, institutional records and probation or other reports which provide information about the defendant."

[4] General Statutes § 17a-567 (c) provides in relevant part: "If the court finds such person to have psychiatric disabilities and to be dangerous to himself or others and to require custody, care and treatment at the division, it shall sentence him in accordance with the conviction and order confinement in the division for custody, care and treatment provided no court may order such confinement if the report does not recommend confinement at the division. . . ."

the defendant was in need of care, custody and treatment at the Whiting Forensic Institute. The court sentenced the defendant to confinement in the Whiting Forensic Institute. The defendant appealed from the judgment of conviction to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## I

We first address the defendant's claim that the trial court violated his due process right to a fair trial when it failed to order, sua sponte, a competency examination after observing his behavior at trial. The defendant did not raise the issue of competency at trial. Accordingly, the defendant seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

In *Golding*, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id., 239–40.

The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail. *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999). "The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the

facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim. . . . The defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." (Citations omitted.) *State* v. *Golding*, supra, 213 Conn. 240.

We conclude that the record is adequate to review this claim and that, because "[t]he conviction of an accused person who is not legally competent . . . violates the due process of law guaranteed by the state and federal constitutions"; *State* v. *Gonzalez*, 205 Conn. 673, 686, 535 A.2d 345 (1987); his claim is of constitutional magnitude. Thus, the first two prongs of *Golding* are met. We proceed, therefore, to a consideration of the third prong, namely, whether the alleged constitutional violation exists and deprived the defendant of a fair trial. See *State* v. *Wolff*, 237 Conn. 633, 662, 678 A.2d 1369 (1996). We conclude that the defendant's claim does not meet the third prong of *Golding*.

"The standard we use to determine whether a defendant is competent under state law to stand trial is that set forth in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (test for competence to stand trial is whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him). The *Dusky* standard has been codified at [General Statutes] § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes

of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense." (Internal quotation marks omitted.) *State* v. *Wolff*, supra, 237 Conn. 663.

In addition, "[t]he rule of *Pate* v. *Robinson* [383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)] imposes a constitutional obligation, under the due process clause, to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . When a *Pate* inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant but must hold an evidentiary hearing into the defendant's competence." (Internal quotation marks omitted.) *State* v.*Wolff*, supra, 237 Conn. 663–64." "Competence to stand trial is a legal question, which must ultimately be determined by the trial court." *State* v. *DeAngelis*, 200 Conn. 224, 229, 511 A.2d 310 (1986).

A defendant who appeals on the basis of a trial court's failure to conduct an evidentiary inquiry into his competence must make a showing that the court had before it specific factual allegations that, if true, would constitute substantial evidence of mental impairment. *Sanders* v. *United States*, 373 U.S. 1, 21, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963). "Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . ." (Internal quotation marks omitted.) *State* v. *Watson*, 198 Conn. 598, 605, 504 A.2d 497 (1986). "The decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judi-

cial discretion." *State* v. *Lloyd*, 199 Conn. 359, 366, 507 A.2d 992 (1986); *State* v. *Wolff*, supra, 237 Conn. 665.

The defendant concedes that every criminal defendant is presumed to be competent. See General Statutes § 54-56d (b). He also concedes that he did not request a competency hearing during trial. The defendant argues, however, that the trial court had before it substantial evidence at the time of sentencing that required it to order, sua sponte, an evidentiary hearing to determine the defendant's competency. The defendant argues that such evidence included: (1) his incoherent testimony; (2) a report from the Connecticut department of mental health and addiction services recommending that he be committed to the diagnostic unit of the Whiting Forensic Institute; (3) defense counsel's comments on the defendant's decision not to plead insanity, which prevented the defendant from assisting in the preparation of his own defense; and (4) medical testimony that the defendant was suffering from "long-standing symptoms of a mental disorder." The defendant also argues that the trial court's decision to order a presentence psychiatric examination pursuant to § 17a-566; see footnote 3 of this opinion; indicates that the trial court became aware, during the course of the trial, that the defendant was mentally impaired and, accordingly, should have ordered a § 54-56d (d) examination. We disagree.

This court previously has recognized that "[a]n accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ." (Citation omitted.) *State* v. *DeAngelis*, supra, 200 Conn. 230. The record in this case demonstrates that the defendant was well behaved, courteous and cooperative throughout the proceedings. Defense counsel emphasized this point at sentencing in his pleas for leniency. Further, despite the fact that the defendant rambled when questioned directly about the actual sexual act with C, he

understood and answered responsively all questions asked of him during the trial. While his answers were strange, the defendant never exhibited a lack of knowledge as to the nature of the proceedings. There is nothing in the record that discloses that the defendant received any past psychiatric treatment or that he had taken psychiatric medication. Defense counsel never requested a competency hearing, nor is there any indication, other than a comment by the defense counsel at sentencing, that the defendant did not understand the consequences of not presenting an insanity defense. Additionally, the state never sought a competency examination as it is entitled to do under § 54-56d (c).

The trial court reasonably could have concluded that the evidence relied on by the defendant was insufficient to raise a reasonable doubt concerning his ability to understand the proceedings or assist in his own defense and, therefore, that an independent competency inquiry was not required. See *State* v. *DesLaurier*, 230 Conn. 572, 587–88, 646 A.2d 108 (1994) (independent competency examination not required if defendant: [1] did not suffer from known or apparent mental illness that would impair ability to understand proceedings or assist in defense; [2] possessed minimum communication skills; [3] understood basic charges against him and right to accept or reject plea bargain; and [4] understood consequences of decision).

We assume, from the fact that at the sentencing hearing the trial court ordered a § 17a-566 (a) examination, that the trial court considered the "sexual act [to be] of a compulsive or repetitive nature" and that the defendant might have "psychiatric disabilities and [be] dangerous to himself or others . . . ." General Statutes § 17a-566 (a) (3). Nevertheless, as previously stated, "[a]n accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ."

(Citation omitted.) *State* v. *DeAngelis*, supra, 200 Conn. 230. A § 17a-566 examination serves as a sentencing tool and only occurs after conviction. The fact that the trial court suspected that the defendant might have psychiatric disabilities and ordered a § 17a-566 examination to assist it in determining whether the defendant required custodial care and treatment at the Whiting Forensic Institute, rather than incarceration within the correctional system, does not, therefore, compel the conclusion that the trial court had reason to believe that the defendant suffered from a mental impairment that prevented him from presenting a defense. *State* v. *Wolff*, supra, 237 Conn. 663.

We cannot conclude, therefore, that the trial court abused its discretion in failing to order, sua sponte, a competency inquiry. Accordingly, the defendant has failed to meet the third prong of *Golding*.

## II

Next, we address the defendant's claim that the trial court improperly admitted testimony by the victim's sister, J, regarding uncharged prior misconduct by the defendant. The following additional facts and procedural history are relevant to this claim.

During the course of the trial, the court held a hearing outside the presence of the jury to determine whether the court should permit the state to introduce evidence of prior sexual misconduct committed by the defendant. At that hearing, the trial court heard the state's offer of proof regarding J's testimony, which indicated that the defendant had engaged in a pattern of sexual misconduct. Specifically, the state indicated that J: (1) was C's sister; (2) was the daughter of V, the defendant's adopted daughter, and thus the defendant's granddaughter; (3) would testify to the fact that the defendant had engaged in sexual activity with members of his family; (4) that the family members were not willing

participants; and (5) that the defendant propositioned J at his house, the same location where the sexual activity occurred with C.

The defendant argued that the evidence of these other acts neither demonstrated a unique pattern nor indicated a striking similarity to the charged offense and, therefore, was inadmissible. The defendant further argued that the probative value of J's testimony was greatly outweighed by its prejudice to the defendant. The state maintained that this testimony showed a common design or mode of operation indicating that the defendant had committed acts of sexual misconduct with members of his family. Noting the similarity of the incidents, namely, that both C and J were related to the defendant, and that the incidents occurred in the same location, at the defendant's house in Stratford, the trial court determined that the probative value outweighed the prejudicial effect. We conclude that the trial court did not abuse its discretion in overruling the defendant's objection and admitting into evidence J's testimony.

As a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. *State* v. *Kulmac*, 230 Conn. 43, 60, 644 A.2d 887 (1994). Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. *State* v. *Brown*, 199 Conn. 47, 56, 505 A.2d 1225 (1986). Evidence may be admissible, however, for other purposes, such as "to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency." (Internal quotation marks omitted.) *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987).

We have developed a two part test to determine the admissibility of such evidence. "First, the evidence must

be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, supra, 205 Conn. 660.

"The first prong of the test requires the trial court to determine if an exception applies to the evidence sought to be admitted." *State* v. *Kulmac*, supra, 230 Conn. 61. In this case, the trial court admitted J's testimony because there were similarities between the two incidents and her testimony demonstrated a common scheme or design. When evidence of other crimes is offered to show a common design, "the marks which the . . . charged [and uncharged] offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other. . . . It is not enough that the two offenses are similar. To establish a common design, the characteristics of the two offenses must be sufficiently distinctive and unique as to be like a signature. . . . On the other hand, the inference need not depend upon one or more unique features common [to both offenses], for features of substantial but lesser distinctiveness, although insufficient to raise the inference if considered separately, may yield a distinctive combination if considered together." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, supra, 205 Conn. 661. "In order to assess the defendant's claim, we must

examine the other crimes evidence and compare it to the charged offense." Id.

"To guide this analysis, we have held that [e]vidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness. . . . We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in [trials of] sex related crimes than other crimes." (Citation omitted; internal quotation marks omitted.) *State* v. *Kulmac*, supra, 230 Conn. 61–62; *State* v. *Hauck*, 172 Conn. 140, 145, 374 A.2d 150 (1976).

The defendant argues that the trial court improperly concluded that the conduct described in J's testimony had a special similarity to the charged offenses. We disagree. The trial court reasonably could have found that the alleged abuse of J was similar to the charged offenses in a number of respects. Both C and J were related to the defendant, and the incidents all occurred in the same location, at the defendant's house in Stratford. The trial court also found that the defendant's conduct leading to intercourse with C was the same conduct complained of by J and that this conduct was directed at members of his own family. The trial court further found that this conduct represented a common scheme in that the defendant was using his home as "his private hunting ground, so to speak, for sexual activities and favors."

Giving appropriate deference to the trial court, we conclude that the trial court did not abuse its discretion in holding that the circumstances of the other acts were sufficiently similar to the charged offense to be probative of a common scheme. Having determined that the

evidence of other crimes was relevant and material, we now review the trial court's determination that the probative value of the evidence outweighed its prejudicial effect. *State* v. *Morowitz*, 200 Conn. 440, 445–46, 512 A.2d 175 (1986); *State* v. *Shindell*, 195 Conn. 128, 136, 486 A.2d 637 (1985). The primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion. *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982); *State* v. *Hauck*, supra, 172 Conn. 144.

The defendant argued that the introduction of J's testimony regarding inappropriate sexual advances by the defendant was highly prejudicial because it allowed the jury to conclude that he might have committed a prior bad act, which was, at most, only remotely connected to the charged offense because it was of a sexual nature. Thus, the defendant claimed, by allowing J to testify regarding past inappropriate conduct, the trial court allowed the jury to infer that the defendant was engaged in serious sexual misconduct with both granddaughters.

We defer to the trial court's decision and conclude, however, that the evidence was highly probative and material, and that its probative value significantly outweighed the prejudicial effect. The striking similarities between the prior conduct and the charged conduct were not diluted simply because the charged conduct involved a greater degree of force. As discussed previously in this opinion, the acts described by J had characteristics similar to those of the charged offense and the defendant had the same familial relationship with J as he had with C. The trial court did not abuse its discretion when it concluded that the misconduct described by J was probative of a common scheme of behavior toward the defendant's granddaughters.

Furthermore, the trial court was aware of the potential for prejudice and instructed the jury on the limited use of the evidence in order to safeguard against misuse and to minimize the prejudicial impact. *State* v. *Brown*, supra, 199 Conn. 58; *State* v. *Braman*, supra, 191 Conn. 682. The trial court in its jury instruction limited the use of the testimony as follows: "Now, you did hear testimony of some prior acts by the accused and these prior acts are not part of the offense that was charged in this case and they were admitted only to show the defendant's attitude toward [C] and [J] preceding the events in this particular [charge]. But they are not to be used in any way as saying that [the defendant] is a bad man as a result of those—if you choose to believe the statements made by the witnesses but just to show his attitude or relationship toward both [C] and her sister [J] and are not admitted for any other purpose."

Under these circumstances, the trial court did not abuse its discretion by permitting the state to introduce the evidence of prior misconduct by the defendant.

### III

The defendant's third claim on appeal concerns whether § 53a-72a (a) (2) was intended to encompass conduct occurring between persons related by adoption, rather than by blood. We hold that this statute does encompass adopted as well as blood relatives.

It is a well settled rule in Connecticut that upon a signed adoption decree by a court "such child, by such adoption, shall thereupon, for all intents and purposes, become the legal child of the person by whom it shall be so adopted; and the person so adopting such child shall, to all intents and purposes, become the legal parent of the same, with all rights and duties subsisting between them, belonging and incident to a legitimate parent and child by blood relationship . . . ." (Internal

quotation marks omitted.) *Brooks Bank & Trust Co.* v. *Rorabacher*, 118 Conn. 202, 205, 171 A. 655 (1934).

Specifically, General Statutes § 45a-731 provides in relevant part that the effects of "[a] final decree of adoption, whether issued by a court of this state or a court of any other jurisdiction, shall have the following effect in this state: (1) All rights, duties and other legal consequences of the biological relation of child and parent shall thereafter exist between the adopted person and the adopting parent and the relatives of such adopting parent. Such adopted person shall be treated as if such adopted person were the biological child of the adopting parent, for all purposes including the applicability of statutes which do not expressly exclude an adopted person in their operation or effect . . . ." This statute is traditionally applied in determining inheritance rights, but we conclude that it is applicable in the present case as well.

General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21." General Statutes § 46b-21 specifically includes granddaughter as a degree of kindred, within the scope of § 53a-72a (a) (2).

"Where, as here, more than one statute is involved, we presume that the legislature intended them to be read together to create a harmonious body of law . . . ." (Citations omitted.) *Berger* v. *Tonken*, 192 Conn. 581, 589–90, 473 A.2d 782 (1984). "The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 554, 546 A.2d 226 (1988).

General Statutes § 45a-731 (1) provides that adoption integrates "[a]ll rights, duties and other legal consequences of the biological relation of child and parent . . . ." It follows that one such "legal consequence" is the creation of a grandparent relationship. A grandparent is in a trusted position and cannot use the fact that he is not biologically related to a grandchild to sidestep the law. Accordingly, we affirm the trial court's ruling that an adopted granddaughter falls within the degree of kinship set forth in §§ 53a-72a (a) (2) and 46b-21.

## IV

The fourth claim raised by the defendant on appeal is that the trial court improperly failed to instruct the jury on the definition of "knowingly" in connection with the scienter element of § 53a-72a (a) (2), notwithstanding the defendant's claim at trial that the victim was not his granddaughter. Section 53a-72a (a) provides that "[a] person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21." Specifically, the defendant argues that the court's failure to define the term "knowledge" or to explain how it pertains to the charge of sexual assault in the third degree is an error of constitutional magnitude because it amounts to an instruction that omits an essential element of the crime, in violation of the defendant's due process right to a fair trial. The defendant argues that in order to have committed the crime charged, he needed to be aware of the legal nature of the relationship between himself and C. Thus, the defendant contends that the term "knowingly" as defined in General Statutes § 53a-3 (12)[5]

---

[5] General Statutes § 53a-3 (12) provides: "A person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an

should have been included in the trial court's jury instruction. The state argues that the defendant was aware of the relationships between C, her mother and himself when he engaged in sexual intercourse with C and that the court gave a proper charge to the jury. We agree with the state.

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." (Internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 169, 665 A.2d 63 (1995).

"When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995); *State* v. *Denby*, 235 Conn. 477, 484, 668 A.2d 682 (1995); *State* v. *Ali*, 233 Conn. 403, 422, 660 A.2d 337 (1995). "[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." *State* v. *Corchado*, 188 Conn. 653, 660, 453 A.2d 427 (1982).

offense when he is aware that his conduct is of such nature or that such circumstance exists . . . ."

We have also stated that "[p]enal statutes must be strictly construed . . . but such construction must accord with common sense and commonly approved usage of the language." *State* v. *Edwards*, 201 Conn. 125, 132, 513 A.2d 669 (1986). "[T]his does not mean [however] that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature. . . . No rule of construction . . . requires that a penal statute . . . exclude conduct clearly intended to be within its scope . . . ." (Internal quotation marks omitted.) *State* v. *Scott*, 256 Conn. 517, 531–32, 779 A.2d 702 (2001). In other words, the rule is " 'that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . .' " Id., 531; General Statutes § 1-1 (a).[6]

With these principles in mind, we turn to the trial court's charge to the jury: "A person is guilty of sexual assault in the third degree when such person engages in sexual intercourse with another person whom the actor knows to be related to him with[in] any of the degrees of kindred specified in § 46b-21. . . . The rephrasing the language to apply to this case and working in the degrees of kindred language of Connecticut General Statutes § 46b-21 the statute prohibits a person from having sexual intercourse with another person known to be related to him as follows: Mother, grandmother, daughter, granddaughter . . . . And, of course, in this particular case the state is claiming that [C] was the granddaughter of [the defendant] and I will go into that a little further.

"The state therefore must prove beyond a reasonable doubt the following elements: That the defendant had sexual intercourse with [C], and as far as I know, having

---

[6] General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."

heard the evidence, I don't think that's in dispute, but you are the [final] arbiters of whether intercourse, sexual intercourse, did occur as I've described it—or defined it for you. And that the defendant knew [C] to be a person related to him as his granddaughter and, of course, that is something that the defendant takes issue with, however.

"The state need not prove that the defendant knew it was against the law to have sexual intercourse with his granddaughter through adoption or otherwise. The law in this case makes no distinction between grandchildren related biologically and by adoption. The daughter of an adopted daughter is a granddaughter to the same extent as the daughter of a biological daughter. . . .

"Adopted persons are treated as if they were the biological child of the adopting parent for all purposes including the applicability of statutes. The state must prove beyond a reasonable doubt that the defendant knew that [T] was his adopted daughter and [C] was the daughter of [T].

"If you find beyond a reasonable doubt the following elements . . . one, that the defendant had sexual intercourse with [C] and, two . . . that [C] was the daughter of [T] and that [T] was his adopted daughter you should find the defendant guilty of sexual assault in the third degree."

It is clear from the defendant's own admission that he intentionally and knowingly engaged in sexual intercourse with C.[7] The defendant testified that, during his marriage to V, he adopted C's mother and paid child support for her after his divorce. He also testified that to

[7] The following colloquy occurred on direct examination of the defendant by defense counsel:

"Q. Let me ask you this, George. Did you have a sexual relationship or encounter with [C] on March 13th of 1997?

"A. Yes."

a certain extent he considered C to be his granddaughter and that he knew that C was the daughter of his adopted daughter.[8] These facts indicate that the defendant knew that C was his granddaughter.

We conclude that the trial court's instruction to the jurors fairly represented the case to the jury and that no injustice was done to either party. By charging the jury as it did, the trial court clearly delineated the state's burden of proof on every element of the crime of sexual assault in the third degree. An examination of the jury instructions as a whole concerning the offense reveals that the jurors were adequately informed that, in order to convict the defendant, the state had to prove beyond a reasonable doubt that the defendant knew that C was his adopted granddaughter. The fact that the court did not recite a definition for the word "know" did not mislead the jury. The term "know" can be construed according to the commonly approved usage of the language. The trial court was not required to instruct the jury that the defendant must know that the law makes no distinction between an adopted grandchild and biological grandchild. Persons are presumed to be aware of the law and cannot plead ignorance. General Statutes § 53a-6.[9] Thus, the jury instruction the trial court gave

---

[8] The following colloquy occurred on direct examination of the defendant by defense counsel:

"Q. Okay. Um, you had adopted [T] and [R] at some point; is that correct?

"A. That is correct. . . .

"Q. Did you—did you consider those children [born to T] to be your natural grandchildren?

"A. To a point."

[9] General Statutes § 53a-6 provides: "(a) A person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact, unless: (1) Such factual mistake negates the mental state required for the commission of an offense; or (2) the statute defining the offense or a statute related thereto expressly provides that such factual mistake constitutes a defense or exemption; or (3) such factual mistake is of a kind that supports a defense of justification.

"(b) A person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless (1) the law provides that the

pertaining to sexual assault in the third degree, viewed as a whole, adequately informed the jury of the elements of the crime.

V

The fifth claim by the defendant is that the trial court improperly failed to charge the jury that a mistake of fact can negate intent. Specifically, he alleges that the charge[10] as given by the trial court misled the jury into believing that the defendant claimed ignorance of the law of adoption, when he was claiming the absence of mens rea required for conviction of the substantive crime. We do not need to reach the substance of this claim.

It is well established that this court is not required to review claims that were not properly preserved in the trial court. Practice Book § 60-5. "This court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." *State* v. *Jones*, 39 Conn. App. 563, 566–67, 665 A.2d 910, cert. denied, 235 Conn. 931, 667 A.2d

state of mind established by such mistaken belief constitutes a defense, or unless (2) such mistaken belief is founded upon an official statement of law contained in a statute or other enactment, an administrative order or grant of permission, a judicial decision of a state or federal court, or an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law."

[10] The trial court instructed the jury on mistake of fact as follows: "Now one of the issues that was raised by the defense is the—related to the knowledge of the relationship between the defendant and the—[C] and I would read to you two lines from § 53a-6 of the Connecticut General Statutes. The first lines or sentence would be, a person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact. And a person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that he does not as a matter of law—that it does not as a matter of law constitute an offense. So those are the thoughts or instructions I give you."

800 (1995); see Practice Book § 42-16.[11] The defendant did not file a written request or explicitly except to the charge given on this issue at trial. We do recognize that the defendant relied upon *Golding*, as discussed previously, as a secondary means to obtain review. This issue, however, is closely aligned with the issue that we already have considered, in part IV of this opinion, regarding the defendant's lack of knowledge of the legal relationship between himself and C, which he properly raised at trial. As we previously concluded, the defendant knew that C was the daughter of his adopted daughter, and there was no evidence tending to show a factual mistake in his comprehension of the circumstances, to be evaluated by the jury. The jury instruction given by the trial court with regard to sexual assault in the third degree, viewed as a whole, properly informed the jury of the elements of the crime.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[11] Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . . "