STATE OF CONNECTICUT *v.* JAMES DOWNING
(AC 20826)

Foti, Schaller and Cretella, Js.

Argued September 18, 2001—officially released February 26, 2002

*Martin Zeldis*, senior assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, James Downing, appeals from the judgment of conviction, rendered after

a jury trial, of capital felony in violation of General Statutes § 53a-54b (9).[1] On appeal, the defendant claims that the trial court improperly (1) abused its discretion in allowing a criminologist to testify concerning blood spatter on the defendant's coat and (2) denied the defendant's motion for a mistrial based on prosecutorial misconduct during closing arguments to the jury. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On January 1, 1996, the defendant was arrested and ultimately charged with capital felony, felony murder, robbery in the first degree and larceny in the second degree. The defendant waived his probable cause hearing and pleaded not guilty to all of the charges against him.

On October 27, 1998, a jury of twelve found the defendant guilty of capital felony and not guilty of the other charges. After denying the defendant's motions for a new trial and for a judgment of acquittal, the trial court sentenced the defendant to life imprisonment without the possibility of release. The defendant appealed from his conviction to our Supreme Court, which transferred the appeal to this court on May 31, 2000. Additional facts are set forth as necessary.

I

The defendant claims first that the court abused its discretion in allowing a criminologist to testify concerning blood spatter on the defendant's coat. The defendant argues that because the criminologist's opinion relied in part on a presumptive test for blood, her testimony should have been barred pursuant to State v. Moody, 214 Conn. 616, 573 A.2d 716 (1990). The state argues that

---

[1] General Statutes § 53a-54b provides in relevant part: "A person is guilty of a capital felony who is convicted of . . . (9) murder of a person under sixteen years of age." At the time of his death on December 31, 1995, the victim, Clinton Bennett, was fifteen years old.

*Moody* is distinguishable and that the criminologist's testimony was admitted properly because it was not based on the presumptive test for blood alone, but on three other factors as well.

The following facts are relevant to this claim. At the time of his arrest, the defendant was wearing a coat, which the police seized and sent to the state forensic laboratory for testing. In the winter of 1996, Beryl Novitch, a state forensic biologist specializing in blood and body fluid analysis, examined the defendant's coat and identified at least two human bloodstains on the coat; one was on the back exterior and the other on the front exterior of the coat. The bloodstains matched the blood of both the defendant and the victim, and approximately 45 percent of the general population, but did not yield more specific results. DNA tests of the bloodstains conducted by Carol Scherczinger at the state forensic laboratory also were inconclusive. In August, 1998, Deborah Messina, a criminologist with the state forensic laboratory who analyzes blood spatter patterns, examined the defendant's coat. When she examined the coat, Messina knew of the findings of the previous examinations conducted by Novitch and Scherczinger, including the fact that Novitch had identified conclusively two stains on the defendant's coat as bloodstains. Despite the fact that Novitch had cut the bloodstains out of the coat for testing, Messina knew the location of the bloodstains.[2]

In her examination of the coat, Messina found multiple stains that neither Novitch nor Scherczinger had identified as blood (unidentified stains).[3] Messina testified as to her opinion that some of those unidentified

---

[2] The holes in the coat that Novitch made when she cut the stains out for testing were plainly visible to Messina.

[3] Novitch testified that some of the stains on the defendant's coat were too small to test. Scherczinger analyzed only the two bloodstains that Novitch identified, not the entire coat.

stains were blood based on the following factors: (1) their color; (2) their shape and pattern; (3) their location in the same areas of the coat as the two bloodstains identified conclusively by Novitch; and (4) their positive results in a presumptive screening test, which, although not conclusive, indicated that the stains could be human blood. The defendant objected to Messina's conclusory testimony that the unidentified stains were blood, claiming that *Moody* prohibits testimony based on a presumptive screening test.[4] The court ruled that Messina's testimony was admissible because it was not based solely on the presumptive screening test, as was the case in *Moody*. The defendant now appeals from his conviction, arguing that the court's admission of Messina's conclusions in their entirety was an abuse of discretion. We disagree.

Before reaching the merits of the defendant's claim, we set forth the standard by which we review the court's admission of Messina's testimony. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 133, 773 A.2d 965 (2001).

With that standard in mind, we turn now to the merits of the defendant's claim and, specifically, to his reliance on *Moody*. In *Moody*, our Supreme Court reversed the defendant's murder conviction after concluding that the

---

[4] Our reading of the record reveals that at trial, the only portion of Messina's testimony to which defense counsel objected was that referencing a presumptive screening test. The issue as framed for this court, however, appears to address Messina's conclusions in their entirety.

trial court had abused its discretion in admitting into evidence testimony regarding the results of a presumptive test for blood performed on a stain found on the sole of the defendant's shoe. *State* v. *Moody*, supra, 214 Conn. 628. The defendant sought unsuccessfully to preclude a state's witness from testifying that a stain on the sole of his shoe passed a presumptive test for blood. Id.[5] Over the defendant's objection, the state's witness testified as to the positive test results and further explained that they meant that the stain could have been human blood, animal blood or something other than blood. Id., 627–28.

Our Supreme Court concluded that "the result of the 'presumptive test for blood' had no probative value whatsoever" because the test "did nothing toward establishing the likelihood of the presence of human blood on the sole of the defendant's shoe." Id., 628. The Supreme Court held that the trial court had abused its discretion in denying the defendant's motion in limine because the test result was irrelevant. Id.[6]

We believe that the facts in the present case are sufficiently distinguishable from those in *Moody* so as to render *Moody* inapplicable here. In *Moody*, the witness'

[5] The state had conducted only a presumptive test because the stain was too small for the actual test for blood. *State* v. *Moody*, supra, 214 Conn. 628.

[6] Having found that the trial court abused its discretion, the Supreme Court then noted that "[t]he defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Moody*, supra, 214 Conn. 629. The court concluded that it was more probable than not that the admitted testimony misled the jury and affected the result of the defendant's trial. Id. The court cited a note that the jury had sent to the trial court during its deliberations requesting that the testimony be reread regarding what shoe the blood was found on. Id. The court stated that the note indicated clearly that the jury found the testimony important and that the testimony undeniably misled the jury. Accordingly, the court concluded that the trial court's failure to grant the defendant's motion was harmful. Id., 630. Because we conclude that the testimony in this case was relevant, we do not address the issue of harm.

testimony was held to be inadmissible because it had no probative value and was therefore irrelevant. Id. In the present case, we are not persuaded that Messina's testimony had no probative value.

As the court noted in *Moody*, "[t]he first test of the admissibility of any evidence is whether it is relevant. . . . [E]vidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . . One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable . . . ." (Citations omitted; internal quotation marks omitted.) Id.

Applying the test of relevance to the facts in the case before us, we conclude that the court did not abuse its discretion in admitting Messina's conclusions that the unidentified stains on the defendant's coat were blood spatter stains. Messina's conclusions were supported by facts already admitted into evidence and corroborated the state's theory, which was based on eyewitness testimony, that the defendant beat the victim to death while wearing the coat.

Most significantly, other forensic tests in this case conclusively identified bloodstains on the defendant's coat.[7] Both in his brief and during oral argument, the defendant conceded that if the unidentified stains fell within a spatter pattern that included bloodstains, and if Messina's conclusions relied on that fact, then her testimony would have been admissible. The defendant contends that the facts in the record do not require that concession. We believe that they do. Messina testified that, in her expert opinion, the bloodstains on the coat

[7] In contrast, no conclusively identified blood stains were present on the defendant's shoe in *Moody*. See *State* v. *Moody*, supra, 214 Conn. 627–28.

formed spatter patterns containing many of the unidentified stains. Messina testified further that her conclusions also were based on the color and shape of the unidentified stains and the fact that the presumptive test confirmed that the unidentified stains could be blood. Thus, unlike in *Moody*, the presumptive test here had probative value because its results supported Messina's conclusions, which were otherwise based on scientifically proven facts already in the record. Because we conclude that the court properly admitted Messina's testimony, we need not reach the issue of harm addressed in *Moody*. We conclude, therefore, that the court did not abuse its discretion in admitting the testimony.

## II

The defendant next claims that the court abused its discretion in denying his motion for a mistrial, which was based on prosecutorial misconduct during closing arguments to the jury. Specifically, the defendant argues that the prosecutor engaged in misconduct and denied the defendant his due process rights under the fifth amendment to the United States constitution by (1) alluding to the defendant's failure to testify or to present evidence, (2) personalizing his arguments to the jurors, (3) appealing to the emotions of the jurors, (4) arguing that a witness was afraid of the defendant when she testified, in violation of an earlier court ruling, and (5) arguing to the jurors that they were "responsible for justice in our society." In response, the state argues that none of the challenged statements rises to the level of prosecutorial misconduct. Alternatively, the state maintains that even if some of the prosecutor's remarks were improper, the court's jury instructions sufficiently cured any possible prejudice to the defendant. We conclude that while some of the prosecutor's remarks may have been inappropriate, none rises to the level of prosecutorial misconduct constituting a denial of the defen-

dant's due process rights or otherwise requires a reversal of his conviction.

In our resolution of this claim, we have considered the following facts. During closing arguments to the jury, the prosecutor made five remarks that the defendant argues constituted prosecutorial misconduct. Defense counsel timely objected to each remark, and the court overruled each objection. Following the state's closing argument, the defendant moved for a mistrial based on the prosecutor's alleged misconduct. The defendant also requested that the court give curative jury instructions specific to the prosecutor's remarks. The court denied both the defendant's motion for a mistrial and request for a curative instruction.

Before we address the prosecutor's challenged remarks, we articulate the standard that governs our review of the trial court's denial of the defendant's motion for a mistrial based on prosecutorial misconduct.[8] First, "[t]he principles that govern our review of a trial court's ruling on a motion for a mistrial are well established. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In [its] review of the denial of a motion for mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only

---

[8] The parties are in disagreement as to the appropriate standard of review. The defendant urges us to review this claim on a de novo basis. The state argues that we should use an abuse of discretion standard.

if there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 257, 780 A.2d 53 (2001).

We also note that "[i]n analyzing claims of prosecutorial misconduct . . . we ask whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . The standard that we follow in analyzing constitutional due process claims that allege prosecutorial misconduct is the fairness of the trial rather than the culpability of the prosecutor's conduct." (Citation omitted; internal quotation marks omitted.) Id., 262.

Our Supreme Court has instructed us to focus on several factors in determining whether prosecutorial misconduct was so serious as to amount to a denial of due process. "Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) Id., 262–63. Cognizant of the foregoing standard, principles and factors, we address each challenged remark in turn.

### A

The first remark challenged by the defendant was made in the prosecutor's closing argument.[9] Before the

---

[9] The prosecutor stated in relevant part: "Vanessa Bowden and Abbie Moore both saw [the defendant] beat the victim to death in that room. They both saw him take the money out of the victim's pants after pulling his pants down. They both identified him here in court very positively. They both mentioned his name within the first conversations they had with the police long before the police had a suspect.

"*To counter all of this evidence of his guilt of this crime, you have nothing, no evidence and you have to base your decision . . . .*" (Emphasis added.)

prosecutor completed the argument, defense counsel objected, arguing that the prosecutor made "a comment about the defendant not putting on any evidence." The prosecutor responded that the remark was not made in that context, and the trial court agreed, overruling the defendant's objection, to which the defendant took an exception. Following the prosecutor's closing argument, the defendant again challenged the remark in his motion for a mistrial, which the trial court denied. The court also refused the defendant's request for a curative instruction.

We begin our analysis by recognizing that the state is not prohibited from "calling to the jury's attention any portion of the evidence that stands uncontradicted . . . ." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 174, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999). Only when a prosecutor's comment "focuses the attention of the jury on the failure of the defendant to testify" does it become objectionable. *State* v. *Evans*, 165 Conn. 61, 71, 327 A.2d 576 (1973). "The ultimate test of whether a prosecution argument indirectly and impermissibly comments on the defendant's failure to testify is whether, because of its language and context, the jury would naturally and necessarily interpret it as comment on the defendant's failure to testify." (Internal quotation marks omitted.) *State* v. *Kluttz*, 9 Conn. App. 686, 706, 521 A.2d 178 (1987).

The prosecutor in the present case simply focused the jury's attention on those portions of the evidence that were uncontradicted. We are not persuaded that the jury naturally and necessarily interpreted the remark as commenting on the defendant's failure to testify. The entire remark concerned the defendant's overall lack of rebuttal evidence, not his specific failure to testify. Moreover, the trial court properly instructed the jury that the defendant had "the absolute right . . . not to testify" and that the jury "must not draw any

inference unfavorable to [the defendant] because he ha[d] not testified." The fact that the jury acquitted the defendant on three of the four charges against him persuades us that it did not draw an unfavorable inference against him because he did not testify. Accordingly, we conclude that the prosecutor's remark was not improper and therefore did not constitute prosecutorial misconduct.

## B

The defendant next challenges a portion of the prosecutor's argument, claiming that the prosecutor improperly personalized his remarks.[10] The court disagreed, overruling the defendant's objection without comment. Following the prosecutor's closing argument, the defendant again challenged the remarks in his motion for a mistrial, which the trial court denied. The court also refused the defendant's request for a curative instruction.

Without citing any supporting precedent, the defendant argues that the remarks were prejudicial and constituted personalized comment to the jury. We disagree. We conclude that the remarks were nothing more than a permissible appeal to the jurors' common sense. *State v. Chasse*, 51 Conn. App. 345, 365, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). It was not improper and did not constitute prosecutorial misconduct.

---

[10] The prosecutor stated in relevant part: "A reasonable doubt has to be based upon evidence, and you don't have any evidence that there was blood all over him. You have evidence that there were forty-seven drops because this is his coat and it's medium velocity blood spatter, okay. Did he beat somebody else to death some other day? It's a ridiculous claim. He has medium—*none of you have medium velocity blood spatter on your coats or you could be one of the 12,000 people in New Haven that* . . . ." (Emphasis added.)

## C

The defendant next argues that the prosecutor improperly appealed to the emotions, passions, sympathies and prejudices of the jurors during rebuttal closing argument.[11] Following the prosecutor's closing argument, the defendant challenged the remarks in his motion for a mistrial, arguing that the prosecutor's "comments about [the prosecutor's] mother passing away is as—is outrageous in terms of reaching the emotions of the jurors, and even he had to react while he was saying it, 'this is not for sympathy,' because in fact, that is what it was directed toward." The trial court denied the defendant's motion and his request for a curative instruction.

At sentencing, the defendant again moved for a mistrial, citing the prosecutor's remarks about his mother's death as alleged misconduct. The court denied the defendant's motion because "the court's observations of the jury and the jury's decisions . . . confirm[ed] the fact that the jury was not moved by any feeling of sympathy toward [the prosecutor] in spite of his argument."

---

[11] The prosecutor stated in relevant part: "And I challenge any one of you to tell me almost three years ago, pick a Thursday, and tell me what you did. Now, maybe if you are an 'ER' [television show] fan, you could say I watched 'ER.' But which episode? And then go to a day that isn't ordinary.

"*For me, I would probably pick the time that I heard that my mother had died, and this isn't for sympathy, it's an example of a traumatic experience. And I can remember exactly what I was told about that, and I remember who called on the phone and I remember what I said to them and I can remember my wife's reaction, but I can't tell you what I had for breakfast, and I can't tell you what I was doing fifteen minutes earlier, I can't tell you whether I had breakfast that day. I can remember everything about the traumatic event itself, but I don't remember anything about the ordinary events,* and that is the places where [the defendant] claims there [are] inconsistencies because there are no inconsistencies in any of the testimony, and he did not dare have him repeat it because of the sincerity that you saw in these witnesses on [cross-examination], he never asked a question about what happened, about what we had to prove, never on [cross-examination]." (Emphasis added.)

The defendant has identified the remark concerning the prosecutor's mother's death as the prosecutor's most egregious conduct because it appealed to the emotions, passions, sympathies and prejudices of the jurors. Our Supreme Court has held that "[a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors." *State* v. *Williams*, 204 Conn. 523, 545, 529 A.2d 653 (1987). While the example used by the prosecutor was inappropriate, we note that it was neither related to the facts of this case, nor designed to create sympathy for anyone directly involved in the case. Because there is no evidence that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process"; (internal quotation marks omitted) id., 539; we are not persuaded that the remark deprived the defendant of his right to due process.[12]

D

The defendant next claims that the prosecutor improperly argued, in violation of an earlier court ruling, that a witness was afraid of the defendant when she testified.[13] Following the prosecutor's closing argument, the defendant challenged the remark in his motion for a mistrial, arguing that the prosecutor's statement was

---

[12] We again note that the jury's acquittal of the defendant on three of the four charges against him conflicts, in our view, with the defendant's claim that the jury's emotions, passions and prejudices were so inflamed as to preclude a rationally based decision.

[13] Specifically, the defendant challenges the following comment made by the prosecutor during his rebuttal argument: "*You don't have to have a great memory to know that somebody beat somebody to death with a bat.*

"*And what you saw when [the witness] identified this defendant, I submit to you, was fear that caused her to shake and fear that caused her to cry. And you're an observant group and one of the things, there are twelve of you deliberating, because somebody saw all of this stuff and if it wasn't the guy, she wouldn't have anything to be afraid of.*

"If the only reason she is saying it is to please [me], she wouldn't have to be afraid of having to look at him and having him see her. But you see she is a bad witness when she says stuff that hurts, but she is a great witness when she says stuff that [the defendant] can claim." (Emphasis added.)

improper because it was in violation of a ruling made by the court earlier in the trial.[14] The court denied the

[14] The court ruling occurred during the following portion of the state's redirect examination of Abbie Moore:

"[Assistant State's Attorney]: Yesterday during your testimony, you cried?

"[Moore]: Yes, I did.

"[Assistant State's Attorney]: Why?

"[Moore]: Because—

"[Defense Counsel]: Objection, relevance.

"The Court: Sustain the objection.

"[Assistant State's Attorney]: When you were testifying here yesterday, what was your emotional state?

"[Defense Counsel]: Objection, relevance, not brought—and also beyond the scope of [cross-examination].

"[Assistant State's Attorney]: Judge, I claim it. If the jury needs to be excused, I would like to—

"The Court: Go to the jury room please.

(Whereupon, the jury left the courtroom.)

"The Court: Pose your question.

"[Assistant State's Attorney]: What was your emotional condition yesterday after you walked into the courtroom when you began to testify?

"[Moore]: I was scared.

"[Assistant State's Attorney]: And why were you scared?

"[Moore]: Because of the way he was looking at me, just scared and nervous, I just want to—

"[Assistant State's Attorney]: When you saw him looking at you in that way, had you seen that before?

"[Moore]: Yes, I did.

"[Assistant State's Attorney]: When and where?

"[Moore]: December 31st at Vanessa['s] house.

"[Assistant State's Attorney]: I claim that's relevant to two things: One, the jury has seen her emotional—the external emotional state, I think it's appropriate for them to know why she was reacting the way she was; and, two, it's that part of her identification and her ability to identify the defendant because of the way that he was looking at her, and it was the same way that he looked on that night.

"[Defense Counsel]: I respectfully disagree. This kind of questioning, all it does is incite the emotional aspects with the jurors and inflame the jurors, and it is not relevant and it is beyond the scope of what I asked on [cross-examination].

"The Court: Well, wholly apart from beyond the scope, its probative value is slight compared to the prejudicial effect, and the court will not allow it.

"[Assistant State's Attorney]: Can I ask one more question, Your Honor?

"The Court: Yes, sir.

"[Assistant State's Attorney]: You were able to—you identified the defendant yesterday as being the person who was in the apartment?

"[Moore]: Yes.

defendant's motion for a new trial and his request for a curative instruction.

In our review of the remark, we recognize first that a prosecutor may not make an argument in violation of a court ruling. See *State* v. *Ubaldi,* 190 Conn. 559, 567–68, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). "As previously discussed, in considering claims of prosecutorial misconduct, we apply a due process analysis and consider whether the defendant was deprived of a fair trial. . . . A different standard is applied, however, when the claim involves deliberate prosecutorial misconduct during trial which violates express trial court rulings . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Sherman,* 38 Conn. App. 371, 384, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). When such an allegation has been made, we must determine whether the challenged argument was "unduly offensive to the maintenance of a sound judicial process." (Internal quotation marks omitted.) Id. If we answer that question in the affirmative, we may invoke our supervisory powers to reverse the defendant's conviction. Id. "In determining whether the use of our supervisory powers to reverse a conviction is appropriate, we consider whether the effect of the challenged remark was to undermine the authority of the trial court's ruling . . . . We also consider the degree of prejudice suffered by the defendant as a result of the remark. . . .

"Our Supreme Court . . . has urged a cautionary approach in this regard, noting that [r]eversal of a con-

---

\* \* \*

"[Assistant State's Attorney]: What was it you recognized about him?

"[Moore]: Oh, God. The way, sitting up staring. Please, I want to get this over with, okay. I'm nervous in here.

"[Assistant State's Attorney]: That would be my last question.

"[Defense Counsel]: I object to that.

"The Court: The objection is sustained for the same reason."

viction under our supervisory powers . . . should not be undertaken without balancing all of the interests involved: the extent of prejudice to the defendant; the emotional trauma to the victims or others likely to result from reliving their experiences at a new trial; the practical problems of memory loss and unavailability of witnesses after much time has elapsed; and the availability of other sanctions for such misconduct." (Citations omitted; internal quotation marks omitted.) Id., 384–85.

In light of the foregoing rules and guidance, we do not agree that the prosecutor's comment, although inappropriate, was so unduly offensive to the maintenance of a sound judicial process that a reversal of the defendant's conviction is appropriate. See id., 386. Recognizing "the trial judge's superior opportunity to assess the proceedings over which he . . . has personally presided"; (internal quotation marks omitted) *State* v. *Whipper*, supra, 258 Conn. 257; we are persuaded by the fact that the trial court itself, in finding no basis for a mistrial, apparently did not believe that the challenged argument undermined its own earlier ruling. Furthermore, given the amount and quality of the evidence presented against the defendant, we are not persuaded that the comment was so prejudicial as to cause the jury to change its verdict from innocent to guilty. We conclude that the sanction of reversal is inappropriate. Id., 258–59.

E

The final remark challenged by the defendant was made by the prosecutor during his rebuttal closing argument, when he told the jurors that they were responsible for justice in our society.[15] Following the prosecutor's

---

[15] In his argument to the jury, the prosecutor stated: "Now, maybe when you heard that [the defendant] was arrested you thought, well, the police are responsible for doing justice; and it could be when Judge Fracasse managed the proceedings here and maintained the order of the courtroom and read to you the information you thought that the judge was responsible for doing justice; or maybe when you saw that I had signed the information

closing argument, the defendant challenged the remark in his motion for a mistrial, arguing that the prosecutor's statement was improper because "[t]he jury's task is to find facts in this case and report a verdict. They should not have the weight of the entire criminal justice system on . . . their shoulders." The court denied the defendant's motion and request for a curative instruction.

Absent any case law to persuade us otherwise, we find unavailing the defendant's claim that the remark, in fact, placed "the weight of the entire criminal justice system" on the jurors' shoulders and prevented them from carrying out their task rationally and impartially.[16] We are not persuaded that it constituted prosecutorial misconduct.

We conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.

when it was read to you, you thought that maybe prosecutors are responsible for justice, but, you know, *you are responsible for justice in our society.* And justice means that you have to do what the evidence requires, that you can't speculate, that you can't take that red herring and follow it down the path when it doesn't have anything to do with what happened—to what has to be proven." (Emphasis added.)

[16] We note again the jury's acquittal of the defendant on three of the four charges against him.