STATE OF CONNECTICUT *v.* STACEY WRIGHT
(AC 22603)

Lavery, C. J., and Foti and Stoughton, Js.

Argued February 19—officially released May 13, 2003

*Arnold V. Amore II*, special public defender, for the appellant (defendant).

*Joseph A. Jaumann*, certified legal intern, with whom were *Rita M. Shair*, senior assistant state's attorney, *James E. Thomas*, state's attorney, and, on the brief, *Michael A. Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Stacey Wright, appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (2), and one count of carrying a dangerous weapon in violation of General Statutes § 53-206 (a). On appeal, the defendant claims (1) that the trial court violated her right to the effective assistance of counsel as guaranteed by the sixth amendment to the United States constitution when it denied her pro se motion for a mistrial and (2) that the evidence was insufficient to support her conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence adduced at the trial. At approximately 11 p.m. on February 11, 2000, the defendant arrived at a club on Main Street in Hartford. At about the same time, the victim, Justina Rogers, arrived at

the same club with three other people, including her sister, Jackie Medina. During the night, the defendant was observed staring at the victim, and Medina mentioned that to the victim. At about 1:45 a.m., the club closed and patrons began leaving. As the victim was leaving, a friend told her that Medina was engaged in a fight. The victim went out, approached Medina and tried to pull her away. At about that time, the defendant slashed the victim's face with a box cutter, inflicting a laceration extending from her forehead through her eyebrow to her mouth. The victim lost consciousness and was taken to Saint Francis Hospital and Medical Center where she was treated for her injury. Additional facts will be provided as necessary.

At the time of the oral argument in this appeal, this court, sua sponte, ordered counsel to file simultaneous supplemental briefs addressing the following issue: "Was the constitutional prohibition against a defendant being placed twice in jeopardy for the same offense violated by the dual conviction on the assault counts or on the dual sentencing arising from the same factual situation?" The briefs have been filed, and the parties agree that the result is controlled by *State* v. *Denson*, 67 Conn. App. 803, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002), which considered a similar factual situation and held that the conviction in that case for violations of both subdivisions (1) and (2) of § 53a-59 (a) did not violate the prohibition against double jeopardy.[1] The defendant suggests that *Denson* was wrongly decided and that we take this occasion to overrule that case. We decline to do so.

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person . . . ."

I

The defendant first claims that her federal constitutional right to the effective assistance of counsel was violated when the court denied her motion for a mistrial as her counsel began to present her defense. Acknowledging that an ineffective assistance of counsel claim ordinarily must be raised by way of habeas corpus, the defendant asserts that her claim is based on the action of the court in denying her motion and not solely on the performance of counsel. See *State* v. *Vega*, 259 Conn. 374, 385, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). It is apparent, however, that her real claim is based on her dissatisfaction with her counsel.

The defendant claims that in considering her motion for a mistrial, the court was obliged to apply the two-pronged test for ineffective assistance of counsel articulated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant claims that the court abused its discretion because it failed to apply that test. Whether or not that is the proper test in these circumstances, the short answer is that the court did apply that test. Under *Strickland*, to demonstrate ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Id., 687. The court concluded, having observed counsel's performance, that it was not deficient.

The following facts are relevant to the defendant's claim. Attorney Anthony E. Feit represented the defendant throughout the prosecution's case-in-chief. As Feit began to examine the first witness for the defense, the defendant interrupted, and stated that she was "not getting a fair and effective counsel." The court then excused the jury. After some colloquy with the defendant, the jury returned, and the court instructed it to

disregard the defendant's outburst and recessed for the day. The following day, the defendant addressed the court, stating that she believed that her sixth amendment right had been violated and expressing a variety of concerns regarding Feit's effectiveness as counsel.[2] After the court asked for her specific request, she requested a mistrial. The court addressed some of her concerns, and concluded that to grant a motion for a mistrial would require a level of ineffectiveness well beyond anything suggested by the defendant and that there was no legal basis for granting the motion. The defendant then asked if she could retain another attorney and, after further colloquy, the case was continued from Friday, August 24, to Monday, August 27, 2001. On Monday, attorney Glenn M. Conway appeared and was appointed lead counsel for the defendant, and the case was continued until Wednesday, August 29, 2001, so that Conway could become familiar with the case.

"[T]he principles that govern our review of a trial court's ruling on a motion for a mistrial are well estab-

[2] The defendant made the following statement: "I feel my sixth amendment right has been violated, and these are the reasons why. There has been ineffective assistance of counsel. Attorney Feit does not communicate with defense witnesses. With respect to attorney Feit, many of the questions for my case have been produced by myself. With respect to attorney Feit, he has shown that he is not ready and prepared for this case. Also, attorney Feit is not knowledgeable of the aspects of presenting identification of evidence to potential witnesses. Also, he has shown that he does not know how to cross-examine effectively. Attorney Feit does not understand proper ethics when speaking to a judge. Attorney Feit has also shown he is unaware how to sequester witnesses. Attorney Feit also does not know how to subpoena witnesses correctly and have them present at court. Mr. Feit also does not have a case theory. Mr. Feit does not know where to look for exhibit labels and present it as evidence in court. Attorney Feit has also shown he does not know how to ask Your Honor for time to review evidence regarding police logs upon having received it the morning of trial. He also is very unaware of time efficiency pertaining to court procedures. Attorney Feit does not know how to make sure the witnesses for the defense are here and to testify before court begins. And also attorney Feit has shown that he does not have any phone numbers of defense witnesses in his case file."

lished. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In [its] review of the denial of a motion for a mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Downing*, 68 Conn. App. 388, 396–97, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002); see also *State* v. *Canty*, 223 Conn. 703, 722, 613 A.2d 1287 (1992).

The precise question in this case is not whether the performance of counsel was deficient in some respect, as claimed by the defendant, but whether the court abused its discretion in denying the motion for a mistrial because of claimed ineffective assistance of counsel. Although it is true that claims of ineffective assistance are raised ordinarily by way of habeas corpus because of the need for a full evidentiary record, in this case the claim was made to the court itself, and the defendant expressed her complaints specifically. The court had observed for itself the performance of counsel and could make its determination on the basis of what it had seen and heard. It did not have to rely on a record of the proceedings and, thus, had no need for additional evidence or expert testimony. The court addressed the defendant's concerns and concluded that to grant a motion for a mistrial would require a level of ineffective assistance well beyond anything the defendant had claimed. Finding no legal basis to grant the motion, the

court denied it; however, it granted a continuance so that the defendant could retain additional counsel, as she requested, to conduct her defense. In addition, the court allowed new counsel time to prepare her defense before the trial proceeded. We conclude that the court did not abuse its discretion.

## II

Finally, the defendant claims that the evidence was insufficient to establish that she was guilty of the crimes charged. She does not claim that the evidence was insufficient to establish the assault, but that it was insufficient to establish that she had committed it. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . While the jury may not speculate to reach a conclusion of guilt, [it] may draw reasonable, logical inferences from the facts proven to reach a verdict." (Internal quotation marks omitted.) *State* v. *Riser*, 70 Conn. App. 543, 551, 800 A.2d 564 (2002).

In the present case, there was sufficient evidence from which the jury reasonably could have found that the defendant was involved in a fight with the victim,

that her hand slashed down across the defendant's face and that the victim almost at once began to bleed from a cut to her face. The victim sustained a laceration from her forehead to her mouth, and that injury could have been inflicted by a box cutter. In the early morning, on the day of the incident, the police made an unsuccessful search for the knife at the scene. Later that morning, one of the witnesses went to the scene to look for her keys and found a blood covered box cutter, which she gave to the police. The blood on the box cutter was the victim's blood. From all of the evidence and the inferences that reasonably could have been drawn from the evidence, it was a reasonable conclusion for the jury to have found beyond a reasonable doubt that the defendant was the person who had committed the assault, that the box cutter was a dangerous weapon and that the defendant was carrying the box cutter at the time she committed the assault.

The judgment is affirmed.

In this opinion the other judges concurred.

