STATE OF CONNECTICUT *v.* TONY E. GIBSON
(AC 21779)

Schaller, West and Dupont, Js.

Argued September 18, 2002—officially released February 11, 2003

*Joseph G. Bruckmann,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Cornelius P. Kelly,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Tony E. Gibson, appeals from the judgment of conviction, rendered after a jury trial, of five crimes, all involving three sisters, the daughters of P,[1] who had been his fiancee for seven years. In a five count, long form information, he was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) as to C when she was younger than thirteen years of age, sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) as to J when she was younger than sixteen years of age, two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2) as to J and C, and with threatening in violation of General Statutes § 53a-62 (a) (1) as to a third sister, I.[2]

The defendant claims, as to the four counts involving sexual assault and risk of injury to a child, that the trial court improperly (1) admitted prior uncharged sexual misconduct evidence and (2) denied his motion for a mistrial. The defendant further claims as to the two counts involving J only that (3) the court's final instructions to the jury as to the time the crimes were commit-

---

[1] This opinion uses initials instead of the names of the victims and their mother to avoid the unnecessary disclosure of information that could lead to their identities being revealed. See General Statutes § 54-86e.

[2] The crimes involving C are the subject of counts one and two of the information; the crimes involving J are described in counts three and four. The threatening charge involving I is the subject of the fifth count.

ted were improper in the absence of an instruction limiting the use of the uncharged misconduct evidence.[3] The defendant seeks a new trial because of those alleged improprieties. Those three claims are discussed together in part I of this opinion.

The defendant also claims that in the event that his arguments as to his first two claims fail, (4) the court's sentence for sexual assault in the first degree as to C was constitutionally improper. That claim is discussed in part II of this opinion. The defendant's last claim is that (5) the evidence was insufficient to support his conviction for threatening, as alleged in the fifth count of the information, and that a judgment of acquittal should be directed. That is discussed in part III of this opinion.

The jury reasonably could have found the following facts. The defendant occasionally stayed overnight at the family home of the mother of the three victims of the crimes with which the defendant was accused. On the evening in question, P and her daughter C were sleeping in the same bed. During the night, the defendant woke C by touching her. The defendant pulled down her pants and underpants, and put his fingers inside of her vagina.[4] He then pulled up her pants and underpants, and told her not to tell anyone. When P awoke in the morning, the defendant also was in the bed. P did not know when the defendant had arrived

---

[3] The defendant's brief states that because "the effect of [the] instruction was to violate the defendant's constitutional rights to proper notice of the specific charge against him and to a unanimous verdict, he must be granted a new trial on the third and fourth counts (those involving J) . . . ." He does not make the same arguments as to the first and second counts of the information (those involving C).

[4] For purposes of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), the state need not prove penetration of the vagina, but rather, penetration of the labia majora. *State* v. *Albert*, 252 Conn. 795, 805, 750 A.2d 1037 (2000). The defendant concedes that digital penetration is sufficient for a conviction of sexual assault in the first degree.

during the night and was not aware that anything had happened between the defendant and C.

Later that same morning, after her mother had left, J was in her room when the defendant called her into her mother's bedroom. The defendant told her to sit on the bed, which she did. He then removed her pants and pulled her underpants down to her knees. He inserted his penis into her vagina. She was on her back and he was on top of her, moving back and forth. I, the third daughter, who was thirteen years old at the time, saw J lying on her back with her legs spread and the defendant on top of her, moving back and forth. J had on a top, but no pants or underpants, and the defendant was wearing only a shirt. I went to a fourth sister's room and told her what she had just seen. Additional facts will be provided as necessary.

## I

### PRIOR UNCHARGED MISCONDUCT CLAIMS

The defendant's first three claims of impropriety involve the admission of evidence of prior uncharged sexual misconduct, the failure to grant his motion for a mistrial and the lack of a limiting instruction in the final instructions to the jury as to the use of such evidence as to the charges involving J. We discuss the claims together because they are related. Both the state and the defendant discuss the issues of the admissibility of the prior uncharged misconduct evidence and the failure to grant a mistrial together. The defendant's motion for a mistrial rested on the lack of a limiting instruction before or immediately or closely following the introduction of the evidence of the prior uncharged misconduct. The defendant's third claim, that the language of the final instruction to the jury, without a limiting instruction as to the uncharged misconduct, merits a new trial as to J, is discussed separately by the parties.

## A

## Background

The information alleged that all of the crimes took place during the "early morning hours" or the "morning hours" of August 7, 2000. Over the objection of the defendant, J testified that on more than one occasion prior to August 7, 2000, at her home, when her mother was not there, the defendant engaged in sexual intercourse with her. The state acknowledges that those occasions occurred one or two years prior to August 7, 2000. On some of the occasions, the defendant had given her money afterward, with which she bought candy.

The state sought the admission of the prior acts as relevant to common scheme and motive, and the testimony was admitted by the court "for purposes of showing a common design and limited to that." Before the child testified, out of the presence of the jury, the court stated that it would admit her testimony but that "[it would] give some cautionary instructions to the jury" as to the proper use of the testimony. The day after the testimony, not having yet given such instructions, the court again stated that it would give such an instruction to tell the jury that the testimony was offered for the purpose of showing "a common design and limited to that." Later that same day, the court asked the defendant if he wanted such an instruction and the defendant answered: "It's the position of the defense that the prejudicial impact of [the testimony] so outweighs the probative value . . . that the defense feels no amount of cautionary instructions would help." Defense counsel then requested a mistrial, which the court denied. The court then stated: "I'm not going to give an instruction, then. He has—he has requested that I not do so, all right? All right." The court also stated that it might

"address [the issue]" during the course "of the charge to the jury."

The court gave no instruction during the trial, or in its final instruction to the jury, as to the proper use of the evidence of the prior uncharged misconduct, which had occurred one or two years before August 7, 2000.

## B

### Admissibility of Uncharged Misconduct Evidence

The defendant's main argument is that the prejudicial effect of the evidence outweighed its probative value, particularly because the evidence involved multiple episodes of prior misconduct, and the conduct was similar as to C and identical as to J. On that basis, the defendant argues that the evidence should not have been admitted. Citing numerous Connecticut cases that have upheld the admissibility of the uncharged acts of misconduct, the state argues that the evidence was admissible. The state argues in essence that the similarity of the uncharged prior acts to the charged acts increases the probative value of the evidence, thereby dwarfing the prejudicial aspects of the evidence. We agree with the state.

It is well settled that evidence of prior misconduct is admissible for the purpose of showing knowledge, intent, motive, and common scheme or design, but is not admissible to prove that a defendant is guilty of the crimes with which he is charged.[5] *State* v. *George B.,*

---

[5] In this case, there was no indication in the argument of the state for the admission of the evidence or of the defendant for the exclusion of the evidence, as to whether the evidence was limited to use in the proof of one, some or all of the five crimes with which the defendant was charged. Although the introduction of the evidence was nonspecific as to the crime to which it related, the court and the parties, both at trial and on appeal, treat the evidence as relevant to the first four counts of the information, as do we. No claim is made by the defendant that the uncharged misconduct evidence unduly prejudiced him as to count five, the threatening charge, or that any limiting instruction was needed as to that count.

258 Conn. 779, 790, 785 A.2d 573 (2001). Uncharged misconduct evidence relates to a collateral, uncharged crime and does not prove the commission of the principal crime with which the defendant is charged. *State v. Kulmac*, 230 Conn. 43, 60, 644 A.2d 887 (1994).

The admission of evidence of prior misconduct is within the discretion of the trial court. *State v. Meehan*, 260 Conn. 372, 393, 796 A.2d 1191 (2002). Every reasonable presumption should be given by an appellate court in favor of the trial court's ruling to admit such evidence. *State v. George B.*, supra, 258 Conn. 791. To admit evidence of prior misconduct properly, two tests must be met. The evidence (1) must be material and relevant, and (2) its probative value must outweigh the prejudicial effect of the evidence. *State v. Cator*, 256 Conn. 785, 798, 781 A.2d 285 (2001).

Evidence is material where it is offered to prove a fact directly in issue or a fact probative of a matter in issue. C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.1.3. Relevant evidence is defined in the Connecticut Code of Evidence, § 4-1, as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." The commentary to that section makes it clear that there are two separate components of relevant evidence at common law, probative value and materiality. Evidence is relevant if it tends to support the conclusion even to a slight degree. Id., commentary; *State v. Rinaldi*, 220 Conn. 345, 353, 599 A.2d 1 (1991). Materiality is determined by the pleadings (or information) and the applicable substantive law. Conn. Code Evid. § 4-1, commentary.

In this case, the evidence recounted by J related to prior sexual acts involving her and the defendant. Evidence of prior sexual misconduct is admissible to show

a common scheme or design where the prior acts are not too remote in time, are similar to the offense charged and are committed involving persons similar to the victim. *State* v. *George B.*, supra, 258 Conn. 792; *State* v. *Kulmac*, supra, 230 Conn. 61–62. Moreover, courts are "more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than in other crimes." *State* v. *Kulmac*, supra, 62.

Here, the prior sexual misconduct occurred during a period of one to two years prior to the charged offenses. The prior sexual misconduct was similar in the case of C, and identical in the case of J, to the charged offenses. Additionally, J and C were young daughters of the defendant's fiancée, and the prior acts occurred in the same location, their home. In light of those factors, we conclude that the court did not abuse its discretion in holding that the circumstances of the prior acts involving J were sufficiently similar to the charged offenses to be probative, that is material and relevant, to show a common design. See *State* v. *George B.*, supra, 258 Conn. 792.

The more difficult question is whether the court abused its discretion in determining that the probative value of the evidence outweighed its prejudicial effect. "Prejudicial evidence is evidence that tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence"; (internal quotation marks omitted) *State* v. *Colon*, 71 Conn. App. 217, 243, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002); "but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Legrande*, 60 Conn. App. 408, 416,

759 A.2d 1027 (2000), cert. denied, 255 Conn. 925, 767 A.2d 99 (2001). "The problem is thus one of balancing the actual relevancy of the other crimes evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Internal quotation marks omitted.) *State* v. *Nunes*, 260 Conn. 649, 688, 800 A.2d 1160 (2000).

In sexual assault cases, because of the nature of the evidence and its potential impact on the jury, the use of prior sexual misconduct evidence is usually prejudicial to the defendant, as well as probative of whether the defendant committed the charged crime. The balancing of probity against prejudice, therefore, to determine which trumps the other, in crimes involving sexual assaults and prior sexual misconduct, is a difficult process.

In this case, the probative value of the evidence is increased, and the prejudicial effect decreased, by a number of factors. First, as in most other sexual assault cases, because they usually occur in private, the balance of the case hinged on the victims' testimony versus the defendant's testimony. Thus, the evidence of prior misconduct was important to the state's case to bolster the victims' credibility. See id., 690 (no other equally probative, less prejudicial evidence available to state); *State* v. *Tucker*, 181 Conn. 406, 417, 435 A.2d 986 (1980) (when balancing, court required to consider whether equally probative, less prejudicial evidence available to state).

Additionally, the striking similarities, especially in the case of J, of the prior offenses to the charged offenses made them highly probative. See *State* v. *Madore*, 45 Conn. App. 512, 522–23, 696 A.2d 1293 (1997) (considerable similarities between defendant's behavior in charged, uncharged misconduct rendered evidence

highly probative). Further, both the charged and uncharged offenses were sexual crimes. Therefore, because the jury already had heard, and was in the process of hearing, evidence of the charged sexual offenses, the uncharged sexual misconduct evidence was not as shocking and the prejudicial impact lessened. See *State* v. *Cooper*, 227 Conn. 417, 427, 630 A.2d 1043 (1993) (where evidence similar to uncharged misconduct permeated trial, court found it difficult to believe uncharged misconduct evidence "could have had a tendency to shock or influence the jury or to color the proceedings so as to deprive the defendant of a fair trial").

Another factor in the balancing of probity versus prejudice is that there were several instances of the same or similar acts, thus making the evidence more probative than if only one prior act were involved. Last, we are mindful that we are to give every reasonable presumption to the validity of the "call" by the trial court and that we accord more liberality in the admission of such evidence in cases involving sex related crimes than in cases involving other crimes. Accordingly, we hold that the court did not abuse its discretion in admitting the evidence of the prior uncharged misconduct.

## C

### Motion for Mistrial

The defendant argues that his motion for a mistrial should have been granted because the court did not give a limiting instruction to the jury immediately or closely following J's testimony about the defendant's prior acts of sexual misconduct. The state argues that whether to grant a motion for a mistrial is discretionary with the court, and that granting the motion was not warranted because the jury was still hearing evidence and had not started deliberations. Any prejudice arising from J's testimony, therefore, could be cured by a future

instruction. The state's position is that if a future curative instruction can lessen prejudice, the drastic remedy of a mistrial should be avoided. We agree with the state.

The lack of any limiting instruction as to the use of the evidence of uncharged misconduct can, under some circumstances, allow a jury to infer that the evidence proves that the defendant committed the charged offense. "Accordingly, in order to vitiate this potential prejudice, we generally have required the trial court, sua sponte if necessary, to instruct the jury as to the limited purpose for which such evidence is admitted and for which [crimes] it is to be considered." *State* v. *Ouellette*, 190 Conn. 84, 96, 459 A.2d 1005 (1983); see also *State* v. *George B.*, supra, 258 Conn. 793–94; *State* v. *Huckabee*, 41 Conn. App. 565, 573, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996).

A number of other cases also have considered the role of a limiting instruction after prior sexual misconduct evidence has been admitted. See *State* v. *George B.*, supra, 258 Conn. 794; *State* v. *Ouellette*, supra, 190 Conn. 96; *State* v. *Abrahante*, 56 Conn. App. 65, 77, 741 A.2d 976 (1999); *State* v. *Cummings*, 46 Conn. App. 661, 677, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). None of the cases of which we are aware, however, concern when the instruction must be given or the consequences of not giving such an instruction immediately or closely following the introduction of the evidence. The question for our resolution is whether the motion for a mistrial should have been granted when no limiting instruction had been given at that point in the trial.

A motion for a mistrial is addressed to the sound discretion of the court and should not be granted except on substantial grounds. *State* v. *Downing*, 68 Conn. App. 388, 396, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). A court has broad discretion to

decide whether an occurrence at trial has prejudiced a defendant to the extent that he or she no longer can receive a fair trial. Id. A court should declare a mistrial only if no curative instruction could preserve a defendant's right to a fair trial. *State* v. *McCahill*, 261 Conn. 492, 520, 811 A.2d 667 (2002). A denial of a motion for a mistrial is reversible on appeal only if there has been an abuse of discretion. *State* v. *Cruz*, 71 Conn. App. 190, 204, 800 A.2d 1243, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

Here, at the time the court denied the defendant's motion, it still had another opportunity to give a limiting instruction, namely, in its final instruction after the conclusion of all the evidence. In fact, the court stated that it might "address [the issue]" then. The failure to give a curative instruction immediately or closely following the evidence does not necessitate a conclusion that the court abused its discretion in failing to grant the motion for a mistrial when such an instruction could later be given in the final charge. See *State* v. *DeCaro*, 252 Conn. 229, 250, 745 A.2d 800 (2000).

We conclude that the denial of the motion for a mistrial was not an abuse of discretion.

## D

### Instructional Claim

The third claim of the defendant involves counts three and four, the crimes in which J was the victim. The defendant argues that in view of the instruction that was given as to the time the crimes were committed, the final instruction to the jury should have contained a limiting instruction as to the use of the evidence of the prior misconduct. The defendant argues that the combination of the omission of a limiting instruction and the language of the court as to time absolved the state from having to prove the crime as charged.

The court's instruction was in relevant part: "Time. The state has alleged that the defendant committed these crimes at a certain time. It is not essential in a criminal prosecution that a crime be proved—that a crime be proved to have been committed at a precise time alleged. It is sufficient for the state to prove the commission of the crime . . . at any time prior to the date of the complaint within the statute of limitations. Time is not an essential element of the offense." The jury had a copy of the entire charge in the jury room while it deliberated.

During its deliberations, the jury sent a note to the court inquiring as follows: "Is it possible to find out from [J] the first time [the defendant] put his private part into her private part. How old was she the first time?" The court informed the jury as follows: "With respect to your question, I've talked to both of the attorneys in this matter and whatever she said with respect to prior acts occurred, obviously from the evidence, prior to the date of August 7—19—of the year 2000, all right? And the question, how old was she at— the first time? There was no testimony with respect to that." The colloquy with the court and both counsel just prior to the court's statement to the jury makes it clear, in the state's words, that the question referred to the "uncharged misconduct that occurred before" the date specified in the information.

The defendant did not except after the charge was given to any portion of the charge, nor did he file a written request to charge pursuant to Practice Book § 42-16[6] seeking a limiting instruction in the charge as to the use of the evidence of uncharged misconduct.

[6] Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ."

The state claims that the issue is unpreserved and that neither review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), nor review under the plain error doctrine; Practice Book § 60-5; is warranted. The state further claims that even if review is had, the court's charge considered as a whole afforded the defendant a fair trial. The defendant argues that his claim is constitutional because the instruction compromised both his right under the sixth amendment to the United States constitution to be informed of the nature and cause of the accusation, and his due process right to a unanimous verdict. He therefore claims that he is entitled to *Golding* review and, failing such review, that the omission of a limiting instruction was plain error.

Prior cases that have refused plain error or *Golding* review for failure of the trial court to give a limiting instruction in its final charge are inapposite. See, e.g., *State* v. *Ortiz*, 40 Conn. App. 374, 380–81, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996); *State* v. *Servello*, 14 Conn. App. 88, 94–95, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988).

In *State* v. *Servello*, supra, 14 Conn. App. 94, the defendant failed to ask for a limiting instruction during the court's final charge and claimed that it should have been given sua sponte. This court held that the claim was not constitutional and did not deserve plain error review. Id., 95. Unlike the situation in the present case, there is no indication in *Servello* that the defendant on appeal claimed a violation of a specific constitutional right.

In *State* v. *Ortiz*, supra, 40 Conn. App. 381, this court held that the failure to give a limiting instruction about the use of uncharged misconduct evidence was not reviewable under *Golding*. That case, however, is care-

ful to note that its holding applies only "[a]bsent a claim of constitutional magnitude." Id.

In this case, the defendant's claim is not simply that a limiting instruction was not given, but that in combination with that lack of an instruction, the instruction as to "time" deprived him of a constitutional right. The court's instruction stated that although the state had alleged that the defendant committed the crimes at a particular time, it was "sufficient for the state to prove the commission of the crime . . . *at any time prior to the date of the complaint* within the statute of limitations. Time is not an essential element of the offense." (Emphasis added.)

The claim that an instruction is nonspecific as to the time of a crime can impact on a defendant's sixth amendment right to be informed of the nature and cause of the accusation. See *State* v. *Orsini*, 187 Conn. 264, 274–75, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982). The defendant claims that the broadening of the time period over which he committed the charged crimes had an adverse impact on his ability to be informed of the nature and cause of the accusation against him; contra id.; and it is likely that the jury used the prior misconduct evidence for a substantive purpose. See *State* v. *Huckabee*, supra, 41 Conn. App. 575.

We conclude that the defendant's claim that his sixth amendment rights were violated is a constitutional one and warrants review under *Golding*.[7] Having concluded

---

[7] Although Practice Book § 42-16 provides that we are not bound to consider error as to the giving of or failure to give an instruction without a written request to charge having been filed, we are not precluded from doing so if the lack of the instruction involves a constitutional right. Although the admission of the uncharged misconduct evidence was an evidentiary ruling; see *State* v. *Faria*, 47 Conn. App. 159, 175, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998); we are here concerned with the aftermath of that evidentiary ruling and its impact on the defendant's constitutional rights, given the court's final instruction.

that the defendant's claim is reviewable because it was constitutional and the record is sufficient for review, we now discuss the claim.[8]

"[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Amado*, 254 Conn. 184, 194, 756 A.2d 274 (2000).

Although it is true that time is not usually an essential element of an offense; *State* v. *Hauck*, 172 Conn. 140, 150, 374 A.2d 150 (1976); we are not here dealing with an instruction concerning an "on or about" date of a crime with which a defendant is charged; see *State* v. *Orsini*, supra, 187 Conn. 274–75; or a minor time discrepancy between the dates alleged in an information and the testimony. We are, instead, concerned with a definite date of a crime as alleged in an information and an instruction that obviated the state's need to prove that the crime was committed on or about that date. The issue at trial did not relate to whether the crimes involving J occurred on August 7, 2000, but whether the defendant committed the acts.

The third count of the information, which alleged sexual assault in the second degree as to J, and the

---

[8] Because we conclude a *Golding* review is warranted, we need not determine if plain error exists.

prior uncharged misconduct evidence, involve the very same victim, the very same sexual act, and the very same location and circumstances of the act, except as to the dates of occurrence. The failure of the court to give any instruction to the jury as to the proper use of the uncharged misconduct evidence, in combination with its instruction as to time, could have no other consequence than to mislead the jury. That such a result ensued is shown by the fact that the jury asked about how old the victim was the first time that the defendant had engaged in sexual intercourse with her. Her age at the prior time was not relevant to whether he had engaged in sexual intercourse with her on August 7, 2000, or her age on August 7, 2000.

The lack of a limiting instruction was exacerbated by the instruction of the court that the defendant could be found guilty without any need for the state to prove the commission of the crime at the "precise time alleged" and that it was "sufficient for the state to prove the commission of the crime . . . at any time prior to the date of the complaint . . . ." The combination " 'almost surely guarantee[d] a verdict of guilt' "; *State* v. *Busque*, 31 Conn. App. 120, 132 n.7, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994); because the uncharged misconduct evidence was likely used by the jury for the substantive purpose of proving the charged crime as alleged in the third count of the information. See *State* v. *Huckabee*, supra, 41 Conn. App. 575. As a result, the conviction of the defendant of sexual assault in the second degree as to J must be set aside and a new trial ordered.

The defendant also was charged in count four of the information with risk of injury to a child, J, in that he "had contact with the intimate parts, as defined in [General Statutes §] 53a-65" in "a sexual and indecent manner likely to impair the health and morals of such child . . . ." The crimes of sexual assault in the second

degree and risk of injury to a child are separate offenses because each requires proof of an element that the other does not. See *State* v. *Weiner*, 61 Conn. App. 738, 745, 767 A.2d 1220, cert. denied, 256 Conn. 902, 772 A.2d 600 (2001); *State* v. *Hayes*, 20 Conn. App. 737, 754, 570 A.2d 716, cert. denied, 215 Conn. 802, 574 A.2d 218 (1990); *State* v. *Apostle*, 8 Conn. App. 216, 246, 512 A.2d 947 (1986).

General Statutes § 53a-65 (8) defines intimate parts as "the genital area, groin, anus, inner thighs, buttocks or breasts." The uncharged misconduct of the defendant was sexual intercourse with J, which includes "intimate" parts as used in § 53a-65. The evidence of that misconduct, in combination with the lack of a limiting instruction prohibiting its use by the jury to conclude that the defendant had committed the crime of risk of injury to a child as to J, as charged, and the instruction that the particular time the charged crime was committed was not an essential element of the offense, lead us to conclude that the defendant is entitled to a new trial on the fourth count of the information, as well as on the third count.

Although the two crimes alleged in the third and fourth counts, both involving J, are separate for the purposes of prosecution, they are so closely intertwined on the facts of this case that the conclusion that a new trial must be had as to the sexual assault in the second degree charge requires the same conclusion as to the charge of risk of injury to a child. A new trial is ordered as to both counts three and four.

## II

### SUFFICIENCY OF EVIDENCE ON THE THREATENING COUNT

The jury reasonably could have found the following facts related to the threatening count. After the defen-

dant noticed that I, a younger sister of J, had observed his assault on J, the defendant stopped and put on his clothes. Meanwhile, I and J had gone downstairs to talk to their grandmother about the incident. When they came back upstairs, I was in her bedroom talking to her sisters about what had happened. The defendant overheard the conversation. Thereafter, the defendant approached I. To keep her from getting away, the defendant grabbed her arm and pushed her into the bedroom. The defendant asked her "why was she lying" and said that "when [I get] out of jail, it is going to be just [you and me]." The defendant was angry and upset during the encounter.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002). "The question on appeal is . . . whether, after reviewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State* v. *Clay*, 51 Conn. App. 694, 698, 724 A.2d 1134, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). "The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Nunes*, supra, 260 Conn. 659.

Under § 53a-62 (a) (1)[9] "threatening . . . requires the state to show that the defendant, by physical threat,

---

[9] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening when: (1) By physical threat, he intentionally places

intentionally placed or attempted to place another person in fear of imminent serious physical injury. It is not the danger or risk of injury, but the victim's perception, which is essential to the . . . crime." *State* v. *Jacobowitz*, 182 Conn. 585, 438 A.2d 792 (1981), overruled in part on other grounds, *State* v. *Welch*, 224 Conn. 1, 4, 615 A.2d 505 (1992). The defendant claims that the evidence was insufficient to prove that he intentionally placed I in fear of imminent serious physical injury.

The defendant first argues that the evidence does not show that his statements amounted to a threat of serious physical injury. General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

The words of the defendant's threat were that "when [I get] out of jail, it is going to be just [you and me]." From that statement, and the factors surrounding it, namely, the victim's age, her knowledge of the defendant's prior assaults against her sister J, her telling her grandmother and sisters, and the force used against her so that she would listen to the threat, it was reasonable for the jury to infer that this encompassed a threat of "serious physical injury," possibly a sexual or physical assault on her.

The defendant's second argument is that even if the threat was a threat of serious physical injury, it was not imminent because by its language, the statement related to when the defendant got out of jail.

"[T]he law does not equate imminent with immediate. A threat does not require 'immediate menace of violence

or attempts to place another person in fear of imminent serious physical injury . . . ."

or acts showing a present ability and will to execute the threat. . . . A threat imports the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. A threat, unlike an assault, is not limited by time or distance.' *State* v. *Snead*, 41 Conn. App. 584, 593, 677 A.2d 446 (1996)." *State* v. *Hopkins*, 62 Conn. App. 665, 672, 772 A.2d 657 (2001); see also *State* v. *Kenney*, 53 Conn. App. 305, 323, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999).

For example, in *State* v. *Snead*, supra, 41 Conn. App. 586, the defendant called the victim, threatening that if she went to the police, she would "be 'as good as dead.' " The defendant argued that the evidence was insufficient to support his conviction of threatening because "the threatened harm was contingent on a future event, namely, the defendant's learning that the victim had gone to the police." Id., 592. Noting the defendant's present ability to harm the victim, the court rejected that argument and found that the evidence supported the conviction of threatening because "[a] threat . . . is not limited by time or distance . . . [and] is always an indication of probable evil to come, whether at once or at some uncertain time in the future." Id., 593–94.

Here, as in *Snead*, the defendant had a present ability to harm the victim. Additionally, the surrounding circumstances of the threat are such that it was reasonable for the jury to infer that the defendant had placed the victim in fear of "imminent" serious physical injury, as that term has been explained by precedent. As the court found in *Snead*, imminent does not mean immediate. In accordance with *Snead*, therefore, we conclude that the evidence was sufficient to support the defendant's conviction.

## III

## CONSTITUTIONALITY OF THE SENTENCE

The defendant's final claim is that his sentence for his conviction of sexual assault in the first degree under § 53a-70 (a) (2)[10] for the acts committed against C was a violation of his due process and equal protection rights under both the United States and the Connecticut constitutions.[11] On that count, the defendant was sentenced to a twenty year term of incarceration, execution suspended after fifteen years, and twenty-five years probation.

General Statutes § 53a-70 (b) provides in relevant part: "Sexual assault in the first degree is a class B felony for which . . . if the victim of the offense is under ten years of age . . . ten years of the sentence imposed may not be suspended or reduced by the court . . . ." The victim C, born September 21, 1991, was less than nine years of age at the time of the offense on August 7, 2000.

At the sentencing hearing, the prosecutor and the court noted that a conviction of sexual assault in the first degree under § 53a-70 (a) (2) carries a mandatory minimum sentence of ten years imprisonment. Defense counsel stated that the statute was amended in 1995 to provide for a mandatory minimum of ten years if there is sexual intercourse with a victim younger than ten

---

[10] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[11] The defendant has not offered an independent analysis of his claims under the state constitution and, therefore, we will only review the federal constitutional claim. See State v. Wright, 246 Conn. 132, 138, 716 A.2d 870 (1998); State v. Morales, 240 Conn. 727, 738 n.12, 694 A.2d 758 (1997).

years old.[12] See Public Acts 1995, No. 95-142, § 13. He further stated: "I checked, and I don't see any cases where that—where the constitutionality of that particular provision has been litigated so far, so I can imagine the appeal on this matter will raise the question whether it was constitutional for the legislature to set an arbitrary age of ten years old to raise what was then a mandatory one year provision to a mandatory . . . ten year provision for those under ten years old." Counsel also stated that "reading the statute, I don't see, at least *at this point*, that the court has any . . . say in possibly giving anything under ten years." (Emphasis added.)

The defendant argues that the sentencing scheme for sexual assault in the first degree, where the victim is younger than ten years of age, in violation of § 53a-70 (a) (2), violates his equal protection and due process rights under the fourteenth amendment to the United States constitution because the mandatory minimum sentence of ten years is five years more than the mandatory minimum sentence for aggravated sexual assault in violation of General Statutes (Rev. to 1999) § 53a-70a (b), which he claims is a more serious offense.[13]

The defendant did not preserve that precise issue for appellate review, but he did, however, as stated previously, raise a question about the constitutional validity of § 53a-70 (a) (2) at the sentencing hearing. He now requests review under *Golding*. Even if we assume that the issue now raised was not preserved, it would be reviewable under *Golding* because the

[12] Defense counsel conceded that the legislature had imposed an overall mandatory ten year provision encompassing any act of sexual intercourse, including the digital penetration that occurred in this case.

[13] General Statutes (Rev. to 1999) § 53a-70a (b) provides in relevant part: "Aggravated sexual assault in the first degree is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court . . . ."

record is adequate and the claim is of constitutional magnitude.

As in any constitutional challenge, in reviewing the defendant's challenge "to the validity of a statutory scheme, the statut[ory scheme] is presumed constitutional . . . and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . ." (Internal quotation marks omitted.) *State* v. *Wright*, 246 Conn. 132, 138–39, 716 A.2d 870 (1998).

The defendant claims that both his due process and equal protection rights were violated. The standard used in an equal protection analysis is for all material purposes indistinguishable from the analysis for a due process claim. Id., 143. We therefore treat the defendant's claims of due process and equal protection as analytically comparable.

"[T]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." (Citations omitted; internal quotation marks omitted.) Id., 139. Where, as here, "the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis." (Internal quotation marks omitted.) Id.

"Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the

challenged distinction actually motivated the legislature." (Citation omitted; internal quotation marks omitted.) Id., 139–40.

The first inquiry in the analysis is to understand the defendant's argument, that is, which persons are those who are similarly situated but allegedly treated differently. The defendant argues that the relevant comparison is between one who commits sexual assault in the first degree of a victim younger than ten years of age and one who commits aggravated sexual assault in the first degree of a victim younger than ten years of age. Under § 53a-70 (a) (2), a person who commits the former crime is subject to a mandatory minimum penalty of ten years incarceration. Under § 53a-70a as it existed in 1999, a person who committed the latter crime is subject to a mandatory minimum penalty of five years incarceration, regardless of the age of the victim.[14]

The defendant argues that under the rationales of *State* v. *O'Neill*, 200 Conn. 268, 511 A.2d 321 (1986), and *State* v. *Jenkins*, 198 Conn. 671, 504 A.2d 1053 (1986), the different treatment violates his equal protection and due process rights. He argues that aggravated sexual assault in the first degree in violation of § 53a-70a is a more serious crime than sexual assault in the first degree in violation of § 53a-70 (a) (2) and, there-

---

[14] General Statutes § 53a-70a (b) was amended, effective October 1, 2002, to provide that if the victim of an aggravated sexual assault is younger than sixteen years of age, the crime is a class A felony.

The current version of General Statutes § 53a-70a (b), subsequent to its amendment by Public Acts 2002, No. 02-138, § 6, provides in relevant part: "Any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court, except that, if such person committed sexual assault in the first degree by violating subdivision (1) of subsection (a) of section 53a-70, and the victim of the offense is under sixteen years of age, twenty years of the sentence imposed may not be suspended of reduced by the court. Any person found guilty under this section shall be sentenced to a period of special parole pursuant to subsection (b) of section 53a-28 of at least five years."

fore, that the more serious crime cannot provide for a lesser penalty. In *Jenkins*, the defendant challenged the constitutionality of the kidnapping sentencing scheme, which provided a mandatory minimum of ten years for kidnapping in the first degree, but provided a mandatory minimum of only one year for kidnapping in the first degree with a firearm. Id., 674–76.

The court specifically noted that kidnapping in the first degree was a lesser offense included within kidnapping in the first degree with a firearm. Further, the court concluded that there clearly was a legislative error when the legislature provided a more serious penalty for a less serious crime. The court acknowledged that the discrepancy implicated the equal protection clause and could not overcome rational basis analysis because "[i]t is not rational and sensible to impose a lesser term of mandatory imprisonment on one convicted of kidnapping with the use of a firearm than on one convicted for a similar crime not involving a firearm." Id., 679–80. Construing the statutes together and strictly against the state, the court applied the one year mandatory minimum sentence for kidnapping in the first degree with a firearm to kidnapping in the first degree without a firearm. Id., 680. In *Jenkins*, the rationale was that a kidnapping involving the use of a firearm had to be a more serious crime than a kidnapping without the use of a firearm.

In *O'Neill*, the court was faced with a similar question, as in *Jenkins*, involving the arson sentencing scheme. At issue in *O'Neill* were the mandatory minimum sentences for arson in the first degree and arson murder, which imposed, respectively, a ten year minimum sentence and no minimum sentence. Relying heavily on *Jenkins*, the court stated that "[a]rson murder requires a greater degree of culpability and criminality than first degree arson because arson murder involves both arson and death. On the other hand, arson in the first degree

requires a lesser degree of culpability and criminality." *State* v. *O'Neill*, supra, 200 Conn. 289. The court found that this result violated the defendant's equal protection rights. Id.

In the present case, the defendant argues that on the facts, an aggravated sexual assault in the first degree on a child less than nine years old with the use of a deadly weapon or with intent to disfigure or under circumstances evincing an extreme indifference to human life must be a more serious crime than a sexual assault in the first degree on that child.[15]

For several reasons, we find *Jenkins* and *O'Neill* distinguishable from the statutory scheme at issue in the present case. We initially note that "the legislature has wide power to prescribe the nature, character and extent of defined offenses . . . ." Id., 288. "The legislature is entitled to establish more severe penalties for acts which it believes have greater impact and graver consequences." Id. "[I]t is not the prerogative of courts in this area lightly to launch an inquiry to resolve a debate which has already been settled in the legislative forum." (Internal quotation marks omitted.) Id. The legislative power is, however, subject to constitutional proscription. Id., 289.

---

[15] General Statutes § 53a-70a (a) provides: "A person is guilty of aggravated sexual assault in the first degree when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense (1) such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a deadly weapon, (2) with intent to disfigure the victim seriously and permanently, or to destroy, amputate or disable permanently a member or organ of the victim's body, such person causes such injury to such victim, (3) under circumstances evincing an extreme indifference to human life such person recklessly engages in conduct which creates a risk of death to the victim, and thereby causes serious physical injury to such victim, or (4) such person is aided by two or more other persons actually present. No person shall be convicted of sexual assault in the first degree and aggravated sexual assault in the first degree upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

Therefore, in evaluating the constitutionality of the sentencing scheme here, we must determine whether there is any plausible policy reason for the discrepancy in treatment. Applying rational basis review to the defendant's claim, we are mindful that the "legislature, cognizant of the constitutional guarantees of equal protection, must be deemed to have sought to attain a rational and sensible result that avoids placing a statute in constitutional jeopardy." Id., 287.

The legislature has a "legitimate interest in deterring crime by setting more severe penalties for crimes that the legislature reasonably perceives as being more easily committed than other crimes, regardless of the relative seriousness of the prohibited conduct." *State* v. *Wright*, supra, 246 Conn. 148. In that regard, the legislature could have reasonably concluded that sexual assault in the first degree against a child is more often and more easily committed, more likely to go undetected for a longer period of time and more likely to recur than an aggravated sexual assault against either an adult or a child. "[I]n setting penalties, [*the legislature*] *is not limited to an assessment of harm* [but] is entitled to conclude that . . . such penal purposes as *general deterrence* will be appropriately served by such a penalty." (Emphasis in original; internal quotation marks omitted.) Id.

Therefore, the harsher sentence for sexual assault in the first degree against a child is a means of deterring the crime, which in the legislative opinion may be more prevalent and, thus, more easily subject to deterrence.

The defendant argues, and this court does not dispute, that an aggravated sexual assault in the first degree against a child younger than ten years of age because of its aggregative violence can be categorized as a more serious offense than sexual assault in the first degree against a child younger than ten years of

age. Section 53a-70a makes clear, however, that no injustice will result where the facts would allow a prosecution under either statute.

Section 53a-70a (a) provides in relevant part: "No person shall be convicted of sexual assault in the first degree and aggravated sexual assault in the first degree upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information." The legislature made it clear, therefore, that the two offenses could be prosecuted together, but that no person could be convicted of both offenses. Thus, the legislature was aware of the possible interaction between the two statutory offenses. The two crimes can be charged simultaneously, with the ability of the trier to choose the conviction that is more appropriate, under the circumstances. Depending on which statute a defendant is convicted of having violated, the legislature has provided that a defendant may be punished appropriately, that is, differently.

"[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because, in practice, it results in some inequality. . . . The problems of government are practical ones and may justify, if they do not require, rough accommodations . . . ." (Internal quotation marks omitted.) Id. We conclude that in practice, the differing terms of the mandatory minimum sentences in § 53a-70a and § 53a-70 (a) (2) do not fail to satisfy rational basis review.

In the present case, contrary to the facts in *Jenkins*, there was no indication, as existed in *Jenkins*, that the trial court would have imposed a lesser mandatory minimum term for the defendant's conviction of sexual assault in the first degree had the statute so provided.

In fact, the court sentenced the defendant to a term of imprisonment greater than that required under the mandatory minimum terms provided for in either of the statutes criminalizing sexual assault in the first degree or aggravated sexual assault in the first degree. The defendant, therefore, has not shown that a clear violation of his constitutional rights exists that denied him a fair trial. We conclude that the defendant need not be resentenced.

The judgment is reversed only as to counts three and four and the case is remanded for a new trial on those counts. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.