# STATE OF CONNECTICUT *v.* LUIS M. FERNANDEZ
## (AC 22521)

Dranginis, Flynn and Bishop, Js.

Argued December 5, 2002—officially released April 8, 2003

*Auden Grogins*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David M. Holzbach*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Luis M. Fernandez, appeals from the judgments of conviction, rendered after a jury trial, of five counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), five counts of possession of narcotics in violation of General Statutes § 21a-279 (a) and one count of violation of probation in violation of General Statutes § 53a-32. On appeal, the defendant claims (1) that the trial court improperly permitted the state to introduce into evidence acts of his prior uncharged misconduct and (2) that there was insufficient evidence for the jury to have convicted him on the five counts of sale of narcotics by a person who is not drug-dependent in violation of § 21-278 (b). We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. In early October, 2000, the defendant became the subject of a police narcotics investigation. Officers from the Danbury police department conducted a series of surveillances of the defendant, and were able to confirm

his physical description and the facts that he used the nickname "Alex," conducted his business through the use of a pager and primarily drove a white Honda Civic with a license plate that read "998PLC."

Beginning on October 13, 2000, the Danbury police began a series of controlled purchases from the defendant, first by showing Officer Thomas Barcello a photograph of the defendant to be able to identify him. Barcello then was provided with the defendant's pager number, a body transmitter and $100 in cash. Barcello then proceeded to call the defendant's pager number. The defendant returned the page and told Barcello to go to the McDonald's parking lot in Danbury. After Barcello arrived at the parking lot, a white Honda Civic with a license plate reading "998PLC" entered the lot. Barcello left his vehicle, approached the defendant's vehicle and said, "Can I get two?" whereupon the defendant handed Barcello two small plastic bags of powder cocaine. That routine was repeated on October 17 and twice on October 20, when controlled buys were made at different locations.

On October 27, 2000, the Danbury police obtained an arrest warrant for the defendant and planned to execute it upon observing him conducting a sale with a regular buyer. The police conducted surveillance of the defendant throughout the day. At approximately 6:20 p.m., the defendant arrived at the Bradlee's parking lot where he was observed making a sale to Laurie LeBlanc. Upon seeing the sale, officers blocked the defendant's avenues of escape and approached the defendant's vehicle. As the officers approached, the defendant attempted to leave the scene, but his route was blocked by a police cruiser. The police searched LeBlanc and found four small plastic bags of powder cocaine in his possession. The defendant then was placed under arrest.

The defendant was tried on the drug sale and possession charges simultaneously with the violation of proba-

tion proceedings. The jury found the defendant guilty of five counts of sale of narcotics by a person who is not drug-dependent and five counts of possession of narcotics. The court then found that the defendant had violated his probation. The defendant was sentenced to a total effective term of twenty-eight years imprisonment. This appeal followed.

## I

The defendant first claims that the court improperly permitted the state to introduce into evidence acts of his prior uncharged misconduct and improperly failed to give the jury a limiting instruction as to how it could use the evidence of the prior uncharged misconduct.

The following additional facts are necessary for our resolution of the defendant's claims. At trial, the state called LeBlanc, who had been arrested with the defendant on October 27, 2000, as a witness. During direct examination of LeBlanc, the state asked him if he had any contact with the defendant prior to his being arrested on October 27, 2000. The defendant objected, and the jury was excused from the courtroom.

Outside of the presence of the jury, LeBlanc testified that he had dealt with the defendant, whom he knew as "Alex," to purchase cocaine, "a couple of times" before he was arrested, but was unable to specify where and when the prior meetings had occurred. The defendant then objected to the admissibility of LeBlanc's testimony relating to the prior interactions he had had with the defendant, claiming that its probative value was outweighed by its prejudicial effect.

The court, in turn, noted that LeBlanc's testimony was probative of identity and course of conduct. The defendant responded that the testimony should not be allowed because LeBlanc already had identified the defendant as the individual who had sold him the

cocaine on October 27, 2000, and that any further testimony about prior sales would only tend to show that the defendant was a drug dealer.

The court overruled the defendant's objection and permitted LeBlanc to testify, stating that it would provide the jury with an instruction that the testimony about the prior sales was limited to the identity of the defendant. In front of the jury, LeBlanc then testified that prior to his arrest on October 27, 2000, he had dealt with the defendant three or four times. The defendant now claims that LeBlanc's testimony relating to his prior contact with the defendant was irrelevant and that any probative value that it might have had was outweighed by its prejudicial effect.

A

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Our standard of review on such matters is well established. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court." (Internal

quotation marks omitted.) *State* v. *Sawyer*, 74 Conn. App. 743, 747, 813 A.2d 1073 (2003).

"Evidence is material where it is offered to prove a fact directly in issue or a fact probative of a matter in issue. C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.1.3. Relevant evidence is defined in the Connecticut Code of Evidence, § 4.1, as evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *State* v. *Gibson*, 75 Conn. App. 103, 110, 815 A.2d 172 (2003).

In this case, the court permitted the state to introduce into evidence the testimony of LeBlanc relating to the prior occasions when LeBlanc had purchased cocaine from the defendant. The court admitted the testimony to prove the defendant's identity. Clearly, the defendant's identity was both material and relevant. As defense counsel stated in closing argument to the jury, the state had "to prove their case, each and every element of their case, including identification, beyond a reasonable doubt."

The theory of the defense was one of mistaken identity. It was the defendant's contention that he was not the individual who had sold cocaine to Barcello on October 13 and 17, and twice on October 20, 2000. Rather, the defendant claimed that he was at work at the times when the purchases occurred. Further, the defendant claimed that the photograph shown to Barcello prior to his meeting with the defendant was not his photograph and that the vehicle that the police identified at trial as the one that they observed being used during the drug transactions was not his vehicle. Additionally, the defendant testified that he never had met LeBlanc prior to being arrested on October 27, 2000. Accordingly, the court did not abuse its discretion when

it permitted the state to admit into evidence the testimony of LeBlanc regarding his previous interactions with the defendant. The fact that LeBlanc had purchased cocaine from the defendant in the past was relevant to LeBlanc's ability to positively identify the defendant. See *State* v. *Lopez*, 14 Conn. App. 536, 539, 541 A.2d 902 (1988).

Having determined that LeBlanc's testimony was relevant and material, we now must address the court's determination that the probative value of the evidence outweighed its prejudicial effect. "The primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." *State* v. *George B.*, 258 Conn. 779, 793, 785 A.2d 573 (2001).

"Prejudicial evidence is evidence that tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence . . . but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The problem is thus one of balancing the actual relevancy of the other [misconduct] evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Gibson,* supra, 75 Conn. App. 111–12.

LeBlanc's testimony regarding the defendant's prior conduct is not the type of evidence that would " 'improperly arouse the emotions of the jury.' " Id., 111. "A trial court's admission of evidence that a defendant

previously engaged in drug related activity is not necessarily prejudicial." *State* v. *Oliver*, 48 Conn. App. 41, 51, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998). Accordingly, we conclude that the court did not improperly permit the state to introduce into evidence the defendant's prior misconduct.

B

The defendant next claims that the court improperly failed to provide the jury with a limiting instruction regarding LeBlanc's testimony as to the defendant's prior uncharged misconduct. Upon overruling the defendant's objection to LeBlanc's testimony, the court stated that it would provide the jury with a limiting instruction that it was to use the evidence to establish only the defendant's identity. The court, however, never gave such an instruction, nor did the defendant request one. The defendant also did not take any exception to the charge that the court gave to the jury at the close of all the evidence.

The defendant's brief to this court does not provide any legal authority for his conclusion that the trial court was required to give a limiting instruction to the jury. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *In re Kachainy C.*, 67 Conn. App. 401, 413, 787 A.2d 592 (2001). Even if we were to assume, without deciding, that the court should have provided a limiting instruction, the absence of such an instruction was harmless given the strength of the state's case. See *State* v. *Kaddah*, 250 Conn. 563, 576–77, 736 A.2d 902 (1999).

## II

The defendant's final claim is that there was insufficient evidence for the jury to have convicted him on five counts of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b)[1] because he proved by a preponderance of the evidence that he was drug-dependent. We disagree.

"To obtain a conviction under § 21a-278 (b), the state must prove that the defendant possessed narcotics with the intent to sell them. [T]he absence of drug dependency is not an element of the offense . . . . Rather, [proof of drug dependency provides] an exemption from liability that must be proved by the defendant. . . . [A] person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent at the time of the offense. . . .

"Whether the defendant met his burden is for the jury to determine. It is without question that the jury is the ultimate arbiter of fact and credibility. . . . As such, it may believe or disbelieve all or any portion of the testimony offered. . . . A trier of fact is free to reject testimony even if it is uncontradicted . . . and is equally free to reject part of the testimony of a witness even if other parts have been found credible. . . . It is axiomatic, however, that, in rejecting such testimony, a fact finder is not free to conclude that the opposite is true." (Internal quotation marks omitted.) *State* v. *Alvarado*, 62 Conn. App. 102, 110–11, 773 A.2d 958, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001).

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

At trial, the defendant introduced the testimony of Robert Harkins, a physician. Harkins testified that he was a general family practitioner and had diagnosed the defendant as drug-dependent. Harkins' diagnosis was based on a series of questions that he had asked the defendant, and the review of certain medical records from Danbury Hospital and the department of correction's medical facility. On cross-examination, Harkins testified that he was not a specialist in chemical dependency, and that his diagnosis of the defendant as drug-dependent was primarily based on the self-reporting of the defendant and that his diagnosis would be affected if the responses from the defendant were not accurate. Additionally, Harkins testified that the medical reports he used from Danbury Hospital and the department of correction's medical facility were generated from responses from the defendant. When questioned by the court, Harkins testified that his physical examination of the defendant was limited because it occurred when the defendant was incarcerated and there was a Plexiglas screen separating him from the defendant at all times.

The defendant testified that he was dependent on drugs in October, 2000, and that he had been using drugs for approximately six years. Additionally, the defendant stated that he used drugs prior to being arrested on October 27, 2000.

In rebuttal, the state called Erin Nolan, a probation officer and licensed alcohol and drug counselor. Nolan had met with the defendant in August, 2000. During the interview, the defendant admitted to using marijuana and drinking alcohol. The defendant, however, denied using any illegal narcotic substances such as cocaine, heroin and lysergic acid diethylamide, also known as LSD, and denied having any substance abuse issues. Nolan also testified that she observed no physical signs of substance abuse by the defendant during their meet-

ing. Additionally, during its case-in-chief, the state elicited from Detectives Mark Trohalis and John Merullo, and from Officer Barcello, that during their interactions with and surveillance of the defendant, they did not observe him to be under the influence of any type of intoxicating drug.

"The credibility of expert witnesses and the weight to be given to their testimony and to that of lay witnesses . . . is determined by the trier of fact. . . . In its consideration of the testimony of an expert witness, the [trier of fact] might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . . It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony, and can construe such evidence in a manner different from the parties' assertions." (Internal quotation marks omitted.) Id., 112.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that it was not unreasonable for the jury to discredit the testimony of the defendant and Harkins, whose diagnosis was based on information provided by the defendant without any corroborating evidence, and to credit the testimony of Nolan, a licensed drug counselor, and the police officers, who had significant prior experience regarding individuals in various states of intoxication. Accordingly, we conclude that it was reasonable for the jury to find that the defendant did not meet his burden of proving, by a preponderance of the evidence, that he was drug-dependent between October 13 and 27, 2000.

The judgments are affirmed.

In this opinion the other judges concurred.